Josephine CASTILLO, Appellant,

v.

The STATE of Texas, Appellee,

Ysidro CASTILLO, Sr., Appellant,

v.

The STATE of Texas, Appellee,

Jose MORONES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 10–87–187–CR to 10–87–189–CR.

Court of Appeals of Texas,
Waco.

Nov. 23, 1988.

Rehearing Denied Dec. 30, 1988.

John H. Hagler, Douglas D. Mulder, John D. Nation, Dallas, for appellants.

Patrick C. Batchelor, Criminal Dist. Atty., Corsicana, for appellee.

OPINION

McDONALD, Chief Justice.

These are separate appeals by Josephine Sanchez Castillo, Ysidro Castillo, Sr., and Jose Morones, all of whom were convicted for the offense of engaging in organized criminal activities. They were tried jointly; all were found guilty; Josephine and Ysidro were sentenced to 75 years in the Texas Department of Corrections and a $100,000.00 fine; and Morones was sentenced to 15 years in the Texas Department of Corrections and a $100,000.00 fine. There is a single Statement of Facts.

Josephine Castillo, her husband Ysidro Castillo, Sr., and Jose Morones were indicted and tried for the offense of engaging in organized criminal activity by conspiring to deliver marihuana of more than 200 pounds but less 2,000 pounds. After court ordered wiretap intercepts and visual surveillance of the three defendants' residences, State officers on April 14, 1987, observed a U-Haul truck at the Morones residence (across the road from Josephine and Ysidro Castillo's residence) and saw boxes being taken from the truck and placed in a shed. The U-Haul truck then went to the Castillo residence and three more boxes were unloaded and placed in a van parked there. After the U-Haul and van left the Castillo residence, the van was stopped and found to contain three boxes containing approximately 112 pounds of marihuana. Officers then went to the Morones residence and Castillo residence to maintain the status quo until a search warrant could be obtained. Morones executed a written consent to search and officers found 37 boxes in the shed containing 1,398 pounds of marihuana. After securing a search warrant, officers found numerous records of drug transactions in the Castillo house, $109,000.00 in a Cadillac automobile registered to Josephine, $449,000.00 buried under a dog house, $70,000.00 in cash buried in a flower bed, and other evidence of marihuana transactions on the premises.

As noted, Josephine Castillo, Ysidro Castillo and Jose Morones were all found guilty and all appeal on 22 identical points.

Point 1 in each case asserts: "The State failed to prove that the appellants [Josephine, Ysidro and Morones] agreed with the other co-conspirators that one or more of them commit the offense".

The standard of review is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Houston v. State*, Tex. Ct.Crim.Appls., 663 S.W.2d 455; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

Josephine, Ysidro and Morones were charged with engaging in organized criminal activity.

Section 71.02, Texas Penal Code provides in pertinent part: "Engaging in Organized Criminal Activity. (a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following: (5) unlawful * * delivery * * of a controlled substance * *.

Section 71.01 defines:

(a) "Combination" means five or more persons who collaborate in carrying on criminal activities, although:

(1) participants may not know each other's identity;

(2) membership in the combination may change from time to time; and

(3) participants may stand in a wholesaler-retailer or other arms'-length relationship in illicit distribution operations.

(b) "Conspires to commit" means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person or one or more of them perform an overt act in pursuant of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties."

The indictments of Josephine, Ysidro and Morones are identical and basically allege that each, on or about April 14, 1987, did unlawfully, intentionally and knowingly, with intent to establish, maintain and participate in a combination, and in the profits

of a combination, conspire to commit the aggravated offense of unlawful delivery of marihuana of more than 200 pounds but less than 2,000 pounds with [four named others] and in furtherance thereof "Ysidro Castillo, Sr., Gilberto Salinas, Jose Morones, Flavio B. Quintanilla and Josephine Sanchez Castillo performed overt acts as follows":

(1) On April 14, 1987, Ysidro Castillo, Sr., Gilberto Salinas, Jose Morones, Flavio B. Quintanilla and Josephine Sanchez Castillo knowingly and intentionally possessed * * marihuana in an amount less than 2,000 pounds but more than 200 pounds;

(2) On April 14, 1987, Ysidro Castillo, Sr., knowingly and intentionally possessed records of transactions involving the purchase and sale of marihuana;

(3) On April 14, 1987, Gilberto Salinas knowingly and intentionally possessed an inventory sheet for * * marihuana less than 2,000 pounds but more than 200 pounds;

(4) On April 14, 1987, Jose Morones knowingly and intentionally allowed a storage shed under his control to be used to store and conceal marihuana in an amount less than 2,000 pounds but more than 200 pounds;

(5) On April 14, 1987, Flavio B. Quintanilla drove a motor vehicle which contained marihuana in an amount less than 200 pounds but more than 50 pounds;

(6) On April 14, 1987, Josephine Sanchez Castillo knowingly and intentionally possessed records of transactions involving the purchase and sale of marihuana.

The evidence reflects:

(1) *Josephine Sanchez Castillo.* Josephine was the wife of Ysidro Castillo, Sr., and lived in the Castillo residence. The Castillos also owned the property across the road which was rented to Jose Morones. When the Castillo residence was secured, Josephine, Ysidro, Ravel Castillo and Gilberto Salinas were in the residence. Josephine's purse contained $7,212.00 in cash. A Cadillac automobile registered to Josephine and parked at the residence contained $109,000.00 in the trunk. The telephone was registered to Josephine.

(2) *Ysidro Castillo, Sr.* Ysidro lived with his wife Josephine at the Castillo residence. The intercepted telephone call on April 13, 1987, indicated to investigating officers that Chris Castillo spoke with his mother, then his father, in a conversation the officers interpreted as meaning there was to be a shipment of drugs delivered or picked up the following day (April 14), and the person involved wanted to see the load.

Surveillance on April 14, 1987, established a yellow van arrived at the Castillo residence at 12:10; a cream colored Ford LTD arrived at the Castillo residence at 12:53; the Ford then crossed the road to the Morones residence where a U-Haul truck was parked; the Ford then left; a red and silver pickup left the Morones residence at 1:05 and returned at 1:12; the Ford returned to the Morones residence at 1:17; the U-Haul moved around between the Morones house and backed up to a carport; a red pickup arrived at the Castillo house at 1:29; the U-Haul backed around to the back of the Morones house at 1:43; the U-Haul and Ford LTD left the Morones house and drove to the Castillo house where three boxes were unloaded from the U-Haul and carried toward the van at 1:55; the van left the Morones residence and headed south at 1:59; the Ford LTD left the Morones house and headed south at 2:00.

Search of the Castillo residence found documents, drug ledger notes and documentation of drug transactions, money calculations with names of differed persons indicated transactions as high as $554,840.00. Other documents showed calculated weights, numbered packages and indications of money owed or paid.

Search of the Castillo residence premises revealed $499,000.00 in cash under a dog house; $70,000.00 in cash in a flower bed; a number of green bags which smelled of marihuana including a bag with duct tape numbers on it similar to the load that been seized earlier in the day. The van in the Castillo barn contained marihuana residue.

(3) *Jose Morones.* Morones rented his house from Ysidro Castillo, Sr., and was located across the road from the Castillo house. Shortly after Quintanillo was arrested in the van at 2:10, the Morones and Castillo residences were secured by officers to maintain the status quo until a search warrant could be obtained. After his rights were explained, Morones signed a written consent to search his premises and gave officers the key to the storage building. The building was searched and found to contain 37 boxes containing 1,398 pounds of marihuana. The boxes were numbered and had weights on them corresponding to the weight of the marihuana found in the boxes.

(4) *Flavio B. Quintanilla.* After the van was observed leaving the Morones house it was followed by DPS officers. The van was stopped and Quintanilla was found to be the driver. A search of the van yielded 3 large boxes containing 112 pounds of marihuana and a counterfeit bill detector.

(5) *Gilberto Salinas.* Salinas was in the Castillo residence when it was secured. In his pocket were records indicating the weights upon 40 boxes of marihuana which were seized.

Section 71.01(b) as noted specifically provides that "an agreement constituting conspiring to commit may be inferred from the acts of the parties". We think the evidence sufficient from which the jury could conclude that all parties were conspiring with each other to commit the aggravated offense of unlawful delivery of more than 200 pounds of marihuana.

Point 1 is overruled in each case.

Point 2 in each case asserts: "The State failed to prove that [each appellant] performed an 'overt act' in performance of the agreement".

The indictment alleged that Josephine, Ysidro and Morones possessed more than 200 pounds of marihuana and, additionally, that Josephine and Ysidro possessed records of transactions involving the purchase and sale of marihuana; and that Morones knowingly and intentionally al-

lowed a storage shed under his control to be used to store and conceal more than 200 pounds of marihuana.

Josephine and Ysidro were owners of the Castillo ranch and the property which was rented to Morones. Josephine and Ysidro were present on their premises on April 14, 1987, when this drug transaction occurred; records of drug transactions were found in the Castillo home; $499,000.00 was found under the dog house; $70,000.00 was found in the flower bed; $109,000 was found in the trunk of their automobile; and $7,212.00 was found in Josephine's purse. Three boxes of marihuana were delivered to the Castillo residence and deposited in the van. Morones was present when more than 200 pounds of marihuana were transferred from the U-Haul into the shed on his property; he had the keys to the shed. The evidence is ample for this court to conclude that a rational trier of fact could have found beyond a reasonable doubt that Josephine and Ysidro possessed more than 200 pounds of marihuana as well as records of transactions involving the purchase and sale of marihuana; and that Morones knowingly and intentionally allowed his storage shed to be used to store and conceal more than 200 pounds of marihuana.

Point 2 is overruled in each case.

Point 3 in each asserts: "The jury instructions were fatally defective since they failed to require the State to prove [Josephine, Ysidro and Morones] and 'one or more' of the co-conspirators performed an overt act in furtherance of the agreement."

The complaint here is that the jury instructions are fatally defective because the application portion of the charge fails to submit the issue of whether [Appellant] and "one or more" of the other co-conspirators performed an overt act in furtherance of the conspiracy. When the charge is read as a whole, by reason of the definition given, the jury was required to find [appellant] "conspired to commit" the offense, and "conspired to commit" was defined as including an overt act by [appellant] and by one or more co-conspirators. The issue then becomes whether the trial court erred in failing to give further instructions as to

overt acts by co-conspirators which were alleged in the indictment.

Assuming without deciding that further instructions were in order, it is clear to us that no harm is shown, much less egregious harm. *Almanza v. State*, Tex.Ct. Crim.Appls., 686 S.W.2d 157.

Point 3 is overruled in each case.

Point 4 in each case asserts: "The trial court erred in instructing the jurors on the two alternative overt acts since the evidence was insufficient to support those allegations."

The evidence was sufficient to support both issues as to each defendant; possession of marihuana and possession of records of drug transactions as to Josephine and Ysidro; and possession of marihuana and knowingly allowing a storage shed under his control to be used to store marihuana as to Morones. There is ample evidence for the jury to conclude beyond a reasonable doubt that all of the appellants committed both of the overt acts each was accused of.

Point 4 is overruled in each case.

■ Point 5 in each case asserts: "The trial court erred in failing to hear the motion for change of venue".

After the jury was impaneled, the court was notified that [each appellant] had filed a motion for change of venue. There were no affidavits attached to or accompanying the motion. The trial court denied the motion "at this time". Sometime later, affidavits were filed in the clerk's office supporting the motions for change of venue. The motions were never re-urged. The next day the trial court noted that the State had filed a controverting affidavit and that the court was willing to stop the trial, recess the jury and have a hearing on the motions for change of venue. Counsel for appellants did not re-urge the motions or request a hearing.

A motion for change of venue is fatally defective when it is not supported by affidavits of two credible witnesses. *Ward v. State*, Ct.Crim.Appls., 505 S.W.2d 832; *Christopher v. State*, Tex.Ct.Crim.Appls., 489 S.W.2d 573.

There was no error in the court overruling the motions as presented without supporting affidavits. After the affidavits were tardily filed, the court offered to conduct a hearing but counsel chose not to present any evidence. No error is shown.

Point 5 is overruled in each case.

Point 6 in each case asserts: *"Batson* error was committed during the jury selection."*

■ After the jurors were selected and prior to discharge of the voir dire panel, defendants objected on the ground the State had exercised its peremptory challenges in a manner to exclude minority members from the jury panel. It was stipulated the three defendants were Hispanics and that the State used peremptory challenges to strike a number of black jurors. The prosecutor then testified and explained his use of peremptory challenges and the trial court found, based on the racially neutral explanation for the use of peremptory challenges, that there was no systematic exclusion of blacks from the jury, and we agree. Moreover, in order to invoke the protection set forth in *Batson* a defendant must establish purposeful discrimination by showing: (1) that he was a member of a cognizable racial group; (2) that the prosecutors exercised peremptory challenges to remove from the venire members of defendant's race; (3) that the facts and other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race. *Keeton v. State*, Tex.Ct. Crim.Appls., 724 S.W.2d 58.

Since the only objection raised in the trial court is that there was a "Batson error", the consideration of this issue is limited to the equal protection issue decided in *Batson*. Since appellants are not members of the excluded class, there is no violation of equal protection in this cause and no error is shown. And from the record as a whole we determine beyond a reasonable doubt that the matter complained of made no contribution to the conviction or punishment. Rule 81(b)(2) T.R.A.P.

Point 6 is overruled in each case.

■ Point 7 in each case asserts: "The admission of hearsay testimony involving an extraneous marihuana transaction constituted reversible error".

Officer Green testified on direct that he found a large metal drum with a lid beneath the ground next to the barn underneath a shed on the Castillo property and that it appeared to be a storage place container to hide and conceal contraband. On cross-examination Officer Green was asked, "You don't know what that storage facility was used for do you?" When Officer Green attempted to answer he was interrupted by defense counsel and not allowed to answer. On redirect the prosecutor asked Green about his failure to be given an opportunity to respond to his knowledge of what the storage facility was used for. Officer Green was allowed to testify that Linda McAllister had seen 300 pounds of marihuana lifted from the underground facility and placed in her vehicle. She identified the parties present as Nicky Rutledge, Liko Castillo and Ysidro Castillo, Sr.

The State pursued the matter in response to matters initially brought out by defense counsel, and defense counsel having opened the door, the State was entitled to walk in. *Losoya v. State*, Tex.Ct.Appls., 636 S.W.2d 566. The error in any event was invited by the defense and appellants cannot now complain. *Losoya v. State*, supra. It is the rule that when a defendant initiates an inquiry on cross-examination, he cannot complain of the State's later inquiry into the same subject. *Nichols v. State*, Tex.Ct.Crim.Appls., 504 S.W.2d 462; *Polk v. State*, Tex.Ct.Crim.Appls., 490 S.W. 2d 853.

Point 7 is overruled in each case.

Point 8 in each case asserts: "The trial court erred in failing to submit a limiting charge to the jury regarding the use of statements made by a co-conspirator".

Appellants complain the trial court committed reversible error in admitting the statements by Linda McAllister, a co-conspirator, without submitting a limiting charge to the jury regarding the declarations of the co-conspirator. The complained of declarations were properly admitted on the issue of Officer Green's knowledge of the use of the underground storage facility when this issue was raised by cross examination. Since they were properly admitted under a totally different theory than that urged by appellants, there was no error in the failure to submit a limiting instruction as requested by appellants.

Point 8 in each case is overruled.

■ Point 9 in each case asserts: "The trial court erred in admitting a ledger book (S.E. 154) that allegedly referred to drug transactions".

Point 10 in each case asserts: The trial court erred in admitting the contents of the black bag (S.E. 234) since such contents allegedly contained evidence of extraneous drug transactions".

Point 11 in each case asserts: "The trial court erred in admitting the records (S.E. 215–219) that were found in the bedroom dresser since they revealed extraneous offenses".

Appellants were charged with conspiring with others to commit the aggravated offense of unlawful delivery of marihuana with intent to establish, maintain and participate in a combination, and in the profits of a combination. In proof of the existence of a conspiracy and combination, the State is not limited to proof of the existence of the conspiracy only as to those parties charged. Further, proof of the existence of a conspiracy would not be limited to April 14, 1987, but encompasses the entire time limit of the conspiracy and includes all the parties thereto. The complained of records are direct evidence of these appellants' participation in a conspiracy to possess and sell marihuana, along with appellants' involvement with other parties named in the records in such a conspiracy and combination.

And the indictments of Ysidro and Josephine allege they committed an overt act of possessing records of transactions involving the purchase and sale of marihuana. This evidence was admissible as direct

evidence of that allegation in the indictment. And the evidence is admissible to show appellants' system, design, intent and scienter, or guilty knowledge. Josephine and Ysidro occupied premises to which 1,500 pounds of marihuana were delivered and stored. The records clearly illustrate there was an ongoing major business operation of storage and delivery of drugs conducted on these premises and that it was a large-scale operation. The records are material and relevant to show knowledge of the participants and that the purpose and intent of the parties to deliver the large amount of marihuana that was stored on the premises. The records are material evidence tending to prove that some of the parties bought and sold marihuana with regularity, and to prove the conspiracy to deliver marihuana with intent to participate in a combination and the profits of such a combination. *Williams v. State*, Tex.Ct. Crim.Appls., 662 S.W.2d 344; *Albrecht v. State*, Tex.Ct.Crim.Appls., 486 S.W.2d 97; *Morgan v. State*, Tex.Ct.Crim.Appls., 692 S.W.2d 877.

Points 9, 10 and 11 in each case are overruled.

■ Point 12 in each case asserts: "The admission of testimony that marihuana was found in the white van parked on the Castillo property constituted reversible error".

Investigator Mayben testified he searched the barn on the Castillo property and a white Ford van that was parked on the property. The defense objected on the ground of "an extraneous transaction or offense". The objection was overruled and Mayben testified he found a quantity of marihuana in the van. The finding of marihuana on appellants' premises is admissible as evidence of their possession of marihuana, and a circumstance for the jury to consider along with all other circumstances to show a continuing conspiracy to participate in a combination and the profits of the combination. The evidence of marihuana found in the van was not an extraneous offense.

Point 12 in each case is overruled.

■ Point 13 in each case asserts: "The admission of drug transaction records (S.E. 164–171) that were found in a red pickup truck constituted reversible error".

Officer Stone participated in the search of the Castillo property. He testified he searched a red pickup truck that was parked in the driveway of the Castillo house. The defense objected to any evidence or testimony regarding extraneous offenses. The objection was overruled. Officer Stone then testified he found drug transaction notes in the pickup which showed cash amounts of more than $500,-000.00, and the driver's license of Ravel Castillo. Ravel Castillo was in the Castillo house when it was secured by the officers. The evidence was admissible as evidence of the ongoing conspiracy and the participation by Ravel Castillo in the conspiracy.

Point 13 in each case is overruled.

■ Point 14 in each case asserts: "The prosecutor's argument regarding the extraneous offenses constituted reversible error since it amounted to a statement of law contrary to the court's charge".

Here, appellants complain of the argument, "dope records found in Ysidro's wallet and the narcotics record found in Josephine's telephone and address book and the records in the dresser and closet all prove that this group was involved in the organized criminal activity". Appellants objected because the court had instructed the jury that extraneous matters cannot be used as direct evidence proving allegations in the crime. The objection was overruled.

The possession of these drug transaction records were direct evidence of the conspiracy between the parties, their intent to establish, maintain and participate in the combination and profits of the combination.

Point 14 in each case is overruled.

Point 15 in each case asserts: "Reversible error was committed when the prosecutor asked the jury to assess punishment for collateral crimes".

■ Appellants here complain of argument during the punishment phase of the trial. The argument referred to a consideration by the jury of money and drug trans-

actions records and money found on the Castillo premises; and to the marihuana exhibited in the courtroom. Defendants' objections were that the prosecutor was asking the jury to assess punishment based on extraneous offenses.

The drug records, marihuana and money found on the Castillo premises were direct evidence of the existence of a conspiracy and a purpose of the conspiracy. They were not evidence of an extraneous offense and the State's argument was proper.

Point 15 in each case is overruled.

 Point 16 in each case asserts: "The trial court erred in admitting State's Exhibits 6, 154, 164–171, 215–219, 234, and testimony of large quantities of money found on the Castillo property because this evidence was the fruit of an illegal search and seizure because (1) the search warrant affidavit contained stale information and (2) the affidavit failed to provide a nexus between the items to be seized and the property to be searched".

The trial court admitted into evidence documents seized in the search of the Castillo residence on April 14, 1987, which included records of drug transactions including weights, prices, payments and amounts owed, and admitted testimony of the large amount of money found on the Castillo premises, all over appellants' objections.

Appellants here contend the above evidence was not admissible because the affidavit upon which the search warrant was issued contained stale information, and because the affidavit failed to provide a nexus between the items to be seized and the property to be searched.

Officer Herbert made the affidavit for search and arrest warrant on April 14, 1987. We summarize pertinent portions of same:

1. There is in Navarro County a suspected place and premises [which he described by location], and includes a brick house, a semi-trailer, large metal barn, small house, other outbuildings, vehicles, all forming the curtilage of the suspected premises.

2. There is concealed there, marihuana, records, documents, money incident to trafficking in drugs and implements useful in distribution of same.

3. Such place is controlled by Ysidro Castillo, Sr., other Castillos and other persons unknown to affiant.

4. It is he belief of affiant that Ysidro Castillo on 14 April 1987 did possess marihuana of more than 5 lbs.

5. Affiant has probable cause for belief by reason of the following facts:

Affiant is a DPS Officer assigned to the Narcotics Service.

Affiant was advised by DPS Officer Akin on February 2, 1987, that a confidential informant advised him that in December 1986 the informant received in excess of 100 pounds of marihuana from Ysidro Castillo at the described property; that the informant was in the business of delivery and transfer of marihuana and dealt with Castillo and other associates of the Castillos on a regular basis, and that marihuana was routinely stored and concealed on such premises.

Affiant and other DPS Officers surveilled the suspected premises from April 5, 1987 through April 14, 1987; on April 14, 1987, DPS Officers Wilkerson and Bennett made the following observations: (a) at 12:10 a yellow van came and parked on the premises; (b) at 12:53 a Ford LTD arrived at the premises but departed in a few minutes to a house across the road; that a U–Haul had parked at the premises across the road; (c) that the U–Haul truck unloaded some unknown substance; (d) at 1:45 the U–Haul truck moved to the suspected premises and 2 Mexican males off-loaded several large boxes into the van parked on the premises; that the boxes were of a size and package style associated with marihuana transport; (e) affiant approached the premises across from the suspected premises where the U–Haul unloaded the unknown commodity; procured a consent to search the premises from Jose Morones, the person in control of the premises; searched the premises

and in a small building behind Morones' residence found 35 boxes of marihuana weighing 1,500 pounds; such boxes were identical to the boxes described by Bennett and Wilkerson as were off-loaded at the suspected premises of Ysidro Castillo within 30 minutes of the observed off-load at this location, which is ¼th mile from the suspected premises; (f) the van into which observed packages were loaded on the suspected premises was apprehended by DPS Officer Eldridge who searched the vehicle and discovered 4 boxes of marihuana in a quantity of more than 100 pounds.

All DPS officers are licensed and qualified. Affiant believes the information given to Officer Akin is reliable because same constitutes admission against penal interest, and because information as to drug trafficking at the suspected premises has been corroborated by surveillance and investigation.

Wherefore affiant asks for issuance of a warrant to search the suspected place for said property and arrest the accused person.

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of the person supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to insure that the magistrate had substantial evidence for concluding that probable cause existed to issue the warrant. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; *Hennessey v. State*, Tex. Ct.Crim.Appls., 660 S.W.2d 87; *Whaley v. State*, Tex.Ct.Crim.Appls., 686 S.W.2d 950.

The facts and information set forth in the affidavit is ample evidence for us to conclude the issuing magistrate had "a substantial basis for concluding that probable cause existed".

Point 16 in each case is overruled.

■ Point 17 in each case asserts: "The trial court erred in admitting State's Exhibits Nos. 9, 10 and 10A, in that said exhibits were the fruit of an improperly granted interception order because said order was entered by a Judge who was not a judge of competent jurisdiction under Article 18.20, Sec. 3, Texas Code of Criminal Procedure".

Point 18 in each case asserts: "The trial court erred in admitting Exhibits No. 9, 10 and 10A in that said exhibits were the fruit of an improperly granted interception order because neither the affidavit nor the application for said order demonstrated that other investigative methods have been tried and failed".

Point 19 in each case asserts: "All evidence derived from exploitation of the wire intercepts must be suppressed".

Article 18.20, Code of Criminal Procedure provides in pertinent part: Section (3). An application [for a wiretap] may be granted by one of only nine judges appointed by the presiding judge of the Court of Criminal Appeals to consider wiretap applications. One judge is appointed for each administrative judicial region. Only the judge in the administrative region where the proposed interception will be made may act on the application; however, if that judge is absent or unable to serve, or if exigent circumstances exist, application may be made to the appropriate judge in an adjacent administrative judicial region.

Section 8(a)(3) requires that a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed, or to be too dangerous to be tried, must be made in the application for intercept orders.

The first intercept telephones were located in Ellis County which is in the First Administrative District. The second intercept order involved a telephone in Navarro County which is in the Third Administrative District.

The application for intercept was made to Judge Thurman, the appropriate judge of the Third Administrative District. The listening post for both intercepts was in Navarro County. The actual interception oc-

curred at the listening post in Navarro County which is in Judge Thurman's district. "Intercept" means the aural acquisition of the contents of a wire communication through the use of an electronic mechanical or other device. Article 18.20, Sec. 1(3), V.A.C.C.P. An aural acquisition takes place where the telecommunications are heard and recorded. *Evans v. Georgia,* 252 Ga. 312, 314 S.E.2d 421. Since the aural acquisition occurred in Navarro County, Judge Thurman was a proper judge to issue the intercept order.

Alternatively, Section (3)c, Article 18.20, authorizes the judge of all adjacent districts to the location of the telephones to issue the order if exigent circumstances exist. The application stated the location of the telephones in Ellis County were small communities; that 30 officers would be required to maintain them; that there was danger of compromise of the investigation if monitoring occurred in Ellis County; and that there was close association between two of the parties to be monitored and an Ellis County police officer, and there was information concerning "pay off" of the Sheriff.

Since the exigent circumstances existed, the prosecutors were authorized under Article 18.20(3)c to apply to the Third Judicial District for the order.

As to the complaint that the application does not contain a full and complete statement that other investigative procedures have been tried or are unlikely to succeed, the affidavit of Officer Herbert was attached to and incorporated into the application and such affied that normal investigative procedures had been used but failed and appeared unlikely to succeed in the future and reviews the investigative procedure which had been availed of, and that such were unlikely to succeed in the future. There was sufficient showing from which the court could and did determine that Section 8(a)(3) was complied with.

Points 17, 18 and 19 in each case are overruled.

Point 20 in each case asserts: "The trial court erred in denying appellants' motion to recuse the court based on Article 18.12, Texas Code of Criminal Procedure".

█ Appellants argue that Judge Douglas, the trial judge, should have recused himself because he issued the search warrant in this case, and it would be improper for him to sit as a presiding judge over the motions to suppress evidence derived from that warrant. Appellants argue that Judge Douglas had a conflict of interest because he was called upon to "grade his own paper" and determine whether the search warrant was issued by a neutral and detached magistrate. A reviewing court does not review the issue of whether or not the issuing magistrate was in fact neutral or detached, but whether there is sufficient evidence from which a neutral and detached magistrate could conclude that probable cause existed.

No basis for disqualification of Judge Douglas under Article 30.01, V.A.C.C.P. is asserted.

No error is reflected by point 10 and it is overruled in each case.

Point 21 in each case asserts: "The trial court erred in admitting State's Exhibits 13, 13A, 14–16 and 17, documentary evidence recovered from Gilberto Salinas".

Gilberto Salinas was one of the persons detained and later arrested on April 14, 1987, at the Castillo residence. He was searched by Officer Riggins and papers with notations of various weights were found on his person. When the search warrant was issued it was discovered that the notations matched numbers which were on the boxes of marihuana recovered at the Morones residence.

Appellants have no standing to question the validity of the seizure of the papers from the person of Salinas. Appellants may only challenge the propriety of search and seizure when appellants' rights are violated. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. Appellants can only complain about violations of their own constitutional rights, and the deliberate intrusion into the privacy of a third person to gain evidence against appellants does not give rise to grounds for objection to the

introduction of their evidence against appellants. *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468.

No error is shown. Point 21 in each case is overruled.

Point 22 in each case asserts: "The trial court erred in overruling appellants' motion to quash the indictments for said indictments' failure to allege with specificity the dates upon which the alleged criminal combination formed".

Prior to trial appellants filed a joint motion to quash the indictments. One of the grounds asserted in such motion was that the indictments failed to allege with any specificity upon which the alleged criminal combination formed. The trial court overruled the motion to quash.

Appellants claim that the indictments should have been quashed because they failed to give sufficient notice to appellants as to the date of the beginning of the alleged criminal combination and conspiracy. The indictments alleged that on or about the 14th day of April, 1987, appellants conspired to commit the aggravated offense of unlawful delivery of an unusual quantity of a controlled substance and did perform certain overt acts on or about that date. The State is not bound by the allegation of "on or about" in an indictment as to the date of commission of an offense, but may rely upon any date within the period of limitation prior to the return of the indictment. *Nees v. State,* Tex.Crim. Appls., 402 S.W.2d 186; *Williams v. State,* Tex.Ct.Crim.Appls., 565 S.W.2d 63; *Ex parte Hyett,* Tex.Ct.Crim.Appls., 610 S.W. 2d 787.

Point 22 in each case is overruled.

AFFIRMED.