Danny Marshall MORGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 041–84.

Court of Criminal Appeals of Texas,
En Banc.

July 10, 1985.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty. and Deborah E. Harris and David Lewis, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was indicted for the offense of indecency with a child in that on November 28, 1981 he "did unlawfully, knowingly and intentionally engage in sexual contact with [complainant], a child then younger than 17 years, and not then the spouse of [appellant], by contact between the hand of [appellant] and the genitals of complainant, with the intent to arouse and gratify the sexual desire of [appellant]." V.T.C.A. Penal Code, § 21.11(a)(1). Trial before the court was combined with a revocation hearing for a 1978 conviction for indecency with a child, for which appellant had been placed on probation. The trial court convicted appellant of the instant offense and assessed a ten year sentence, which was probated. Appellant's earlier probation was revoked, however, and a five year sentence imposed.

The instant conviction was appealed to the Dallas Court of Appeals. In an unpublished opinion that court reversed appellant's conviction and ordered an acquittal. *Morgan v. State*, (No. 05–82–00618–CR, Tex.App.—Dallas, November 9, 1983). Recognizing that "[t]he requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances," *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Cr.App. 1981), the court found nothing about the circumstances of appellant's brief touching of complainant to establish this specific intent beyond a reasonable doubt.

In reaching this result the court of appeals expressly declined to consider certain extraneous acts of misconduct which were elicited at trial and incident to the revocation proceeding. All were unobjected to by appellant. Observed the court:

"... these prior acts are not sufficient to prove intent in this case where the act did not give the slightest hint that it was to achieve sexual gratification and could just as easily [sic] occured [sic] accidentally. To utilize extraneous offenses to prove intent in this case would violate the principle that a person is to be tried for the specific act with which he is charged and not for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972)."

Slip op. at pp. 5–6.

In its petition for review the State now argues that the court of appeals erred in failing to consider the extraneous acts of misconduct by appellant as proof of his specific intent in the instant offense, and that in committing this error that court substituted its own finding concerning the sufficiency of the evidence for that of the trial court, impermissibly.

Briefly, the facts are as follows. Complainant was an eight year old girl and was a neighbor of appellant, and best friend to his daughter. The night before the alleged incident complainant had spent the night at appellant's house. Sometime the following morning complainant was standing in appellant's kitchen when appellant leaned over and picked her up. It is unclear from complainant's testimony whether appellant continued to stand or sat down with complainant on his knee. At any rate appellant then touched complainant between her legs, where she "goes to the bathroom." This contact was "pretty quick," according to complainant. She confirmed that the judge who presided over an earlier pretrial hearing had timed her estimate of the duration of the contact at one second.[1]

---

**1.** At first complainant testified that appellant "rubbed" her between the legs. When the prosecutor urged her to elaborate, she testified she couldn't remember whether he "rubbed on" her.

Ultimately she testified, still on direct: "He didn't rub me. Just picked me up and touched me between my legs."

Assuming all the extraneous acts of misconduct were *in*admissible for purposes of prosecuting the instant offense, and entertaining the presumption that in a trial before the court the trial court does *not* consider inadmissible evidence in arriving at its judgment, see, e.g., *Keen v. State,* 626 S.W.2d 309 (Tex.Cr.App.1981), we would be compelled to agree with the court of appeals that the evidence was insufficient for the trial court to convict. The circumstances surrounding the alleged act were not of themselves of such a character that the specific intent to arouse and gratify his sexual desire could be attributed to appellant beyond a reasonable doubt therefrom.

The question then arises whether the trial court could justifiably have relied on the extraneous acts of misconduct as evidence sufficient to establish this specific intent.

Complainant herself testified on direct examination, *sans* objection, that appellant had touched her "other times" in the same part of her body, but she could not specify when these events occurred. On crossexamination it was revealed that appellant "touched" her on the night before the touching alleged in the indictment. Complainant was not asked to elaborate on the character or duration of these other incidents.

Pursuant to the State's motion to revoke probation on the previous conviction for indecency with a child evidence was presented as to an incident which allegedly occurred between appellant and complainant's 10 year old sister about a month prior to the indicted offense, on Halloween evening. Complainant's sister testified that she went to the house of appellant to play with her sister and appellant's daughter. While she was there, appellant, sitting in a recliner in the living room watching television, beckoned her to "come over and sit in his lap." She testified:

"Q: ... [t]o be polite, did you do it?
A: Yes.

Q: Then what happened?
A: Then he put one arm around me and the other around my private parts and started rubbing.

Q: By private parts, is that where you go to the bathroom?
A: Yes.

Q: Your underwear's over your private parts?
A: Yes.

Q: You say he rubbed you down there?
A: What?

Q: Did he rub you down there? Did he put his hand on your private parts and rub you?
A: Yes.

Q: Do you remember about how long he did it?
A: About three seconds."

On crossexamination she admitted that the judge at the pretrial hearing had timed her estimate at 2.1 seconds.

Recent opinions of this Court have expressly eschewed the mechanistic invocation and application of "general rules" and their "exceptions" in determining the admissibility of extraneous acts of misconduct by the accused. See, e.g., *Boutwell v. State,* —— S.W.2d —— (Tex.Cr.App., No. 711–83, delivered April 24, 1985) (State's motion for rehearing pending). Thus, in *Williams v. State,* 662 S.W.2d 344 (Tex.Cr. App.1984) we clarified *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), observing that the list of "exceptions" to the "general rule" of nonadmissibility of extraneous transactions contained therein was exemplary rather than exhaustive, and was meant to be reflective of the proposition that extraneous transactions *may* become admissible, upon a showing by the prosecution both that the act is relevant to a material issue in the case and that its relevancy value outweighs its inflammatory or prejudicial potential.[2]

**2.** It is further observed in *Williams,* supra, that the analysis in a case established by direct evidence will differ from one established circum- stantially in that the material issue in a direct evidence case must be *contested* before admission of extraneous offenses is permitted. The

One "exception" recognized by *Albrecht* (indeed, the exception upon which that case turned), is the admission of extraneous transactions "[t]o prove scienter, where intent or guilty knowledge is an essential element of the State's case and *cannot be inferred from the act itself.*" 486 S.W.2d 101.[3] That this so called exception is firmly rooted in the proposition that engendered it, see *Williams v. State,* supra, is easily demonstrated.

First, where intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying. In the instant prosecution it was incumbent upon the State to prove appellant touched complainant with the specific intent to arouse and gratify his sexual desire. Hence, intent was a material issue in the case.

Secondly, that such an intent cannot be inferred from the act itself, as is true in this case, will almost invariably mean that other evidence relevant to that intent, even though such evidence constitutes an extraneous transaction or offense, will be more probative than prejudicial. This is really only to say that where "the defendant's conduct, his remarks and all surrounding circumstances," *McKenzie v. State,* supra, fail of themselves to establish the requisite intent, the need on the part of the State to present some alternate indicia of that intent will more than likely transcend any prejudice resulting therefrom.[4]

In *Prior v. State,* 647 S.W.2d 956 (Tex. Cr.App.1983) the defendant was convicted of indecency with a child. It was alleged in the indictment and proved at trial that he exposed his genitals to a female child younger than 17 years. The complainant "related that [the defendant] 'lifted up his bottom' from the car seat and exposed his penis, which appeared to be erect and 'was moving it back and forth' with his hand." *Id.,* at 957. The defendant then followed the complainant into a department store where he exposed himself to a store em-

---

notion seems to be that where the State's case is wholly circumstantial all material issues are "contested" regardless of whether the accused presents a defensive theory or vigorously attacks any element of the State's case by direct evidence or crossexamination. See *Jones v. State,* 568 S.W.2d 847, 858 (Tex.Cr.App.1978).

This notion fosters the misconception rejected by this Court in other contexts, *viz:* that circumstantial evidence is necessarily and inherently less persuasive or reliable than direct evidence. We have held, however, that there is nothing so intrinsically weak about circumstantial evidence as to call for a specialized jury instruction, *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr. App.1981) or a different standard of evidentiary sufficiency on appellate review, *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983). There is likewise no conceptual necessity to differentiate between circumstantial and direct evidence cases in determining the admissibility of extraneous acts of misconduct.

3. The requirement that the material issue be contested as a prerequisite to admission of extraneous acts in proof thereof, in either a direct or circumstantial case, see n. 2, *ante,* is no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case. It is really, therefore, an aspect of the "more probative than prejudicial" analysis, since, as we note *post,* the greater the State's need to resort to extraneous offenses to prove up some material issue in the case, the higher will be the probative value of that offense in relation to its potential for prejudice.

It is understandable that this requirement has been ignored in those cases "where intent or guilty knowledge is an essential element ... and cannot be inferred from the act itself." *Albrecht v. State,* supra. The State's need is great here since, whether contested or not, intent which cannot be inferred from the act itself will almost have to be established by showing the commission of similar acts. Intent may then be inferred from the fact that such acts are *repeated.* See our analysis, *post.* Absent the ability to prove the extraneous acts, the State may have no case at all.

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

4. The Fifth Circuit has observed:

"Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. [Footnote omitted.] It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice."

*United States v. Beechum,* 582 F.2d 898, 914 (CA5 1978).

ployee.[5] From these acts themselves and from the defendant's accompanying demeanor this Court had no trouble finding that an intent on the part of the defendant to arouse and gratify his sexual desire could be inferred. For this reason the court of appeals' justification for the admission of extraneous offenses in that case, *viz:* "to eliminate any possibility in the jurors' minds that the exposure was in any way accidental[,]" was rejected.

In effect we thus held that because the circumstances surrounding the offense itself were abundantly supportive of the inference of intent, the necessity for extraneous offenses to that end was minimal, and the prejudice arising from their admission, comparatively great.

▋ Unlike the flasher at Weiner's, appellant did not act in such a way that a specific intent is readily inferable. Contrary to the conclusion of the court of appeals, precisely *because* appellant's conduct alone was as consistent with accident as with a specific lascivious intent, any extraneous act committed by appellant which would tend otherwise to demonstrate such intent would be admissible in the instant case. The extraneous acts of which complainant and her sister testified were admissible, then, so long as they are logically relevant to establishing appellant's specific intent—the third and final step in our (admittedly convoluted) analysis.

We recnetly observed:

"[W]here the material issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extraneous offense derives purely from: 'the point of view of the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without for-

mulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them. [...]' 2 Wigmore, *Evidence,* § 302 (Chadbourn rev. ed. (1979)."

*Plante v. State,* 692 S.W.2d 487 (Tex.Cr. App.1985). Before an extraneous offense is admissible to negate the possibility of accident under Wigmore's doctrine of chances, such offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play. See Imwinkelried, *Uncharged Misconduct Evidence,* §§ 5:05, 5:10 (1984).[6]

▋ That appellant touched the complainant in the same manner on the night before the indicted offense, and had also done so on previous, albeit unspecified occasions, and also that he had fondled complainant's 10 year old sister a month previously are facts of indubitable probative value as to appellant's intent. One could not ask for more similar instances of misconduct. That the prior touchings of complainant were of unspecified duration does not detract from their relevance to prove such intent. Even assuming that such other instances were short and, individually, could be attributed to accident, the repetition of the conduct, in combination with the relatively short "rubbing" of complainant's sister's genitals renders the inference of accidental contact in the prosecuted offense highly improbable. We find, therefore, that the extraneous acts of misconduct were relevant to prove appellant's specific intent to arouse and gratify his sexual desire in the instant offense.

---

5. As Presiding Judge Onion appropriately remarks, "[t]his is known as the flasher at Weiner's case." 647 S.W.2d at 957.

6. The degree of similarity required is not so great here as when identity is the material issue, and extraneous offenses are offered to prove *modus operandi.* See, e.g., *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr.App.1974).

Nor do we find that to utilize the extraneous acts in this manner is tantamount to prosecuting appellant for being a criminal in general, as the court of appeals believed. The inference to be drawn from the extraneous acts is not that appellant is a child molester by nature, and therefore more than likely molested complainant. This would indeed be to infer guilt impermissibly from the accused's subjective character. Rather what is sought is an objective inference; that the more often appellant touched the genitals of these neighbor children, however briefly, the less likely it is that each such touching occurred accidentally, and consequently, the more likely that in touching complainant in the instant offense, appellant harbored a guilty intent. We will presume the trial court considered the extraneous acts only in this context for purposes of the conviction before us.

 Finding the trial court was justified in relying on the extraneous acts of misconduct to convict appellant, we hold that the evidence was sufficient to support that conviction.[7]

7. It has been said by this Court that extraneous offenses may also be admissible in cases such as this to establish "the probability of the charged act and the unnaturalness of the accused's attitude toward the victim of his lust." *Johns v. State*, 236 S.W.2d 820, 823 (Tex.Cr.App.1951). See also *Lozano v. State*, 266 S.W.2d 147 (Tex. Cr.App.1954); *Johnston v. State*, 418 S.W.2d 522 (Tex.Cr.App.1967); *McDonald v. State*, 513 S.W.2d 44 (Tex.Cr.App.1974); *Garcia v. State*, 573 S.W.2d 12 (Tex.Cr.App.1978). Admissibility on these bases is usually predicated on the existence of some defensive theory the State seeks to rebut. See *Johnston v. State*, supra, (extraneous offenses admissible to rebut defendant's claim that witnesses had concocted testimony of the primary offense in order to carry out an extortion threat; note however that the Court declared the extraneous offenses admissible to rebut this "frame-up" defense *and* "as evidencing the probability of the act charged and the unnatural attention toward the complaining witness ..." 418 S.W.2d at 527); *McDonald v. State*, supra, (extraneous offenses admissible "in view of the defensive evidence," which "tended to leave the impression with the jury that [defendant] was a church-going hardworking man, and therefore unlikely to commit an offense such as that alleged in the indictment." 513 S.W.2d at 51, 50, respectively).

The judgment of the court of appeals is reversed and its order that appellant be acquitted is vacated, and the judgment of the trial court is affirmed.

The court of appeals also refused to consider the extraneous acts in the instant case under these justifications. In view of our finding the extraneous acts admissible on the issue of intent, we do not pass on this question.

It should be observed, however, that admissibility of extraneous acts under the rationale of the above cases must still comport with the standard enunciated in *Williams v. State*, supra. Hence, to show "the probability of the act charged and the accused's unnatural attention toward the complaining witness" must be logically relevant to a material issue in the case, and the admission of extraneous acts to so demonstrate must be more probative than prejudicial. This latter means, essentially, that there must be some clear and compelling need for the evidence to, e.g., establish an otherwise unproven element of the offense, correct a potentially false impression left with the jury by defensive testimony or shore up some aspect of the State's case which has been genuinely undermined by crossexamination. Otherwise such evidence would only tend to provoke a trier of fact to convict the accused "for being a criminal generally," as the court of appeals feared happened here.