In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00187-CV


______________________________









IN THE MATTER OF THE MARRIAGE OF LINDA JOYCE LESHER 


AND M. MARK LESHER








 


On Appeal from the 102nd Judicial District Court


Red River County, Texas


Trial Court No. 002CV00187




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Linda Joyce Lesher appeals a summary judgment granted in favor of defendant, M. Mark
Lesher. In its summary judgment, the trial court found no evidence of a common-law marriage and
no evidence of a partnership or an expressed trust. The summary judgment, however, does not
address the plaintiff's alternative claims for intentional infliction of emotional distress, joint venture,
equitable reimbursement, joint effort, constructive trust, and attorney's fees. This Court, therefore,
is without jurisdiction over this appeal.

 We have jurisdiction over final judgments only. Lehmann v. Har-Con Corp., 39 S.W.3d 191,
200 (Tex. 2001). An order that does not finally dispose of all remaining parties and claims is not
a final order. Id. If the intent to dispose of the case is not unequivocally expressed in the language
of the order itself, then the order is not final. Id. 

 We notified Appellant of this defect and gave her ten days in which to show cause why this
appeal should not be dismissed for want of jurisdiction. See Tex. R. App. P. 42.3. She filed a
response in which she asks this Court to take jurisdiction in order to avoid manifest injustice, a
multiplicity of trials, and judicial economy. Unless specifically authorized, interlocutory appeals are
not within the Texas appellate courts' jurisdiction. Lehmann, 39 S.W.3d at 200. Here, the reasons
put forth by Appellant to exercise jurisdiction are not among those authorized by statute. (1) Because
the judgment is not final, we dismiss the appeal for want of jurisdiction. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 31, 2003

Date Decided: February 3, 2003


1. See, e.g., N. E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966); Gulf C. &
S.F. Ry. v. Fort Worth & N.O. Ry., 68 Tex. 98, 2 S.W. 199, 200 (1886), op. on reh'g, 68 Tex. 106,
3 S.W. 564 (1887); see Tex. Const. art. V, § 3-b (direct appeals to the Texas Supreme Court); Tex.
Civ. Prac. & Rem. Code Ann. § 15.003(c) (interlocutory joinder and intervention appeals) (Vernon
2002); §§ 51.012 (jurisdiction of courts of appeals), 51.014 (interlocutory appeals) (Vernon 1978
& Supp. 2003); Tex. Gov't Code Ann. §§ 22.001(c) (direct appeals), 22.225(d) (interlocutory
appeal to the Texas Supreme Court) (Vernon 1988 & Supp. 2003).


tore, Friedman's insistence that
she wanted to return home infuriated Crews and he repeatedly insisted that she stay because the two
of them needed to "resolve this." Faced with her recalcitrance, Crews began yelling at Friedman and
he went into the kitchen and broke all of the dishes, all the while cursing Friedman. After Crews
calmed down, he returned to the kitchen to clean up the broken dishes.

 Sensing that his cleanup work provided her with an opportunity to escape, Friedman ran for
the back door, at which point Crews grabbed her from behind, picked her up, and threw her into a
wooden chair in the living room and yelled at Friedman to "stay." Crews then left the room and
returned with a handgun, which he first placed to his head and threatened suicide and then with
which he threatened to kill Friedman. Crews put the gun away when Friedman acquiesced and
agreed not to leave Crews. 

 Unconvinced of Friedman's willingness to stay with him, Crews began to pinch and twist the
skin on Friedman's arms, then grabbed her by the hair and yanked her from the chair to the floor. 
Crews then told Friedman he would show her how much he loved her; he grabbed her and carried
her to the bedroom, where he threw her onto the bed and molested her, ceasing only after repeated
pleas from Friedman. 

 On Saturday, although the physical violence ceased, Friedman was still not free to leave and
she was repeatedly told by Crews that she (not he) bore the entire blame for the situation. On Sunday
morning (December 10), Crews asked Friedman if she was ready to go home. When Friedman
indicated that she wanted to go home (as she requested numerous times on Friday and Saturday),
Crews drove Friedman from Ladonia to her home in Greenville. During the trip to Greenville,
Crews continued to blame Friedman and threatened to "take away everything that [Friedman]
love[d]" if Friedman ever told anyone of the events in Ladonia. 

 Despite the events of the weekend of December 8 through 10, 2006, (3) Friedman and Crews
continued in their dating relationship. Friedman and her daughter with Crews, Kenzie, spent
Christmas Eve at the Crews's home that year. (4) Finally, in February 2007, Friedman (with the help
and moral support of a friend, April Schodowski (5)) reported the bizarre activities of the December
weekend to Fannin County law enforcement officers. Friedman obtained a protective order against
Crews in March 2007. Fannin County law enforcement authorities investigated Friedman's
complaint and obtained a voluntary noncustodial statement from Crews. (6) 

 Despite the past history between them, Friedman resumed her dating relationship with Crews
in August 2008, and Friedman wrote a letter requesting that the charges against Crews be dropped. 
In that letter, she maintained that she had been manipulated and influenced by Schodowski to press
charges against Crews and obtain a protective order. (7) During this period of reconciliation, Friedman
made a gift to Crews of nude photographs of herself. Crews introduced these photographs at trial. 
Friedman testified that she never anticipated, when she gave Crews the photographs, that he would
use them against her. 

 By January 2009, the relationship between Friedman and Crews had once again disintegrated
and Crews made various threats to Friedman, suggesting alternately that she should leave the State
because he was going to come after her, that she should kill herself, and that Kenzie would become
a ward of the State after "Mommy's . . . gone."

II. ISSUES ON APPEAL

 Crews raises five issues on his appeal, maintaining that (1) the evidence is not legally
sufficient to support conviction; (2) the evidence is factually insufficient to support conviction;
(3) the trial court erred in allowing the admission of extraneous misconduct evidence; (4) the trial
court erred in admitting into evidence an audio recording of Crews's noncustodial interrogation by
police; and (5) if none of the alleged errors were sufficient by themselves to cause his conviction to
be reversed, the doctrine of cumulative error requires reversal.

III. ANALYSIS OF POINTS OF ERROR

 A. Legal and Factual Sufficiency of the Evidence

 Crews claims that the evidence is both legally and factually insufficient to support conviction. 

 In reviewing the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). In a legal
sufficiency review, we must defer to the jury's ability to resolve conflicts in testimony, weigh the
evidence, and draw reasonable inferences from the evidence. Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007).

 In contrast to a legal sufficiency review, when conducting a factual sufficiency review, all
evidence is viewed in a neutral light, favoring neither party. Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We are to
determine if the evidence supporting the verdict, although legally sufficient, is nevertheless so weak
that the verdict is clearly wrong or manifestly unjust or whether the verdict is against the great
weight and preponderance of the conflicting evidence. Watson, 204 S.W.3d at 414-15.

 While a factual sufficiency review allows a very limited degree of "second-guessing" the
jury, the review should be deferential, maintaining a high level of skepticism about the jury's verdict
before a reversal can occur. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson,
204 S.W.3d at 417.

 We are directed that a review of both the legal sufficiency and the factual sufficiency of the
evidence should be measured by the elements of the offense as defined by a hypothetically-correct
jury charge. Grotti v. State, 273 S.W.3d 273 (Tex. Crim. App. 2008); Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997). Such a charge accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which the defendant
was tried. Villarreal v. State, 286 S.W.3d 321 (Tex. Crim. App. 2009); Malik, 953 S.W.2d at 240. 
Crews argues neither that the charge is incorrect nor one not authorized by the indictment; it tracks
the indictment and the statute that criminalizes the conduct involved.

 In order to sustain a conviction for aggravated kidnapping, the evidence must demonstrate
that: (1) Crews (2) intentionally or knowingly abducted Friedman (3) either with the intent to
terrorize her or while using or exhibiting a deadly weapon during the abduction or with the intent
to inflict bodily injury (8) or to violate or abuse Friedman sexually. Tex. Penal Code Ann.
§ 20.04(a)(4), (5), (b). 

 "Abduct" means to restrain a person with intent to prevent that person's liberation by either
secreting the abductee in a place where the abducted person is not likely to be found or by using or
threatening to use deadly force. Tex. Penal Code Ann. § 20.01(2)(A), (B) (Vernon Supp. 2009). 
In order to prove abduction in this case, it was the burden of the State to demonstrate that Crews
restricted Friedman's movements by either of the above means.

 The term "terrorize" is not defined by the Texas Penal Code. However, sister courts in this
State have adopted the dictionary definition that this term means "to fill with intense fear or to coerce
by threat or force." Rodriguez v. State, 646 S.W.2d 524, 527 (Tex. App.--Houston [1st Dist.] 1982,
no pet.).

 Crews's legal and factual insufficiency claims are based on the premise that the State failed
to establish that he abducted Friedman. It is true that Friedman acknowledged that she had been to
the house in Ladonia with Crews on numerous weekends in order for Crews to spend time with
Kenzie, their daughter. Crews argues that the evidence demonstrates that not only did Friedman
voluntarily agree to accompany him to the house in Ladonia during the December weekend, but the
fact that she had opportunities to leave (both while she was at the house and when she was at the
store where he took her to buy cigarettes), but did not do so is evidence that she was not held against
her will. Crews further points out that the only evidence of what took place on the weekend in
question was the testimony of Friedman, calling attention to the lack of evidence of bruising or
injuries Friedman claimed to have received during the weekend. He further stresses the lack of any
independent witness accounts that Friedman and Crews were together at the house in Ladonia on any
weekend in December 2006.

 In addition, Crews points to evidence that Schodowski (who was instrumental in convincing
Friedman to file the criminal charges and pursue the issuance of a protective order against Crews)
was a former girlfriend of Crews. Crews then posits that this conduct by Schodowski was prompted
by a pursuit of a vendetta on her part against Crews. In an alternative scenario, Crews's mother,
Betty Crews, testified that Friedman wanted the relationship with Crews to work out and when it
failed, Friedman made the allegations against her son as a spurned woman seeking revenge against
Crews. 

 Finally, Crews contends that because Friedman and Crews reunited on more than one
occasion after the December 2006 incident about which Friedman complains, and because Friedman
freely provided Crews with nude pictures of herself after that time when they resumed their dating
relationship, the evidence against Crews is so undeniably weak that a conviction for aggravated
kidnapping was clearly wrong and manifestly unjust. 

 The record likewise contains evidence which, if true, demonstrates that although Friedman
willingly accompanied Crews to Ladonia, she was then restrained there against her will when Crews
refused to take her home and physically prevented her from leaving the residence. Thus, there is
evidence that Crews restricted Friedman's movements and restrained her liberty by the use of threats
of physical force and that Crews exhibited a deadly weapon (a handgun) during this period of
restraint. See Tex. Penal Code Ann. § 20.01(1), (2)(A) (Vernon Supp. 2009). As pertains to the
element of whether Crews had the intention to terrorize Friedman, "One's acts are generally reliable
circumstantial evidence of one's intent." Rodriguez, 646 S.W.2d at 527. The fear of anticipated
infliction of imminent bodily injury or death is sufficient to indicate an intent to terrorize. Teer v.
State, 895 S.W.2d 845, 848 (Tex. App.--Waco 1995), pet. dism'd, improvidently granted, 923
S.W.2d 11 (Tex. Crim. App. 1996). 

 When the entirety of the evidence is viewed in the light most favorable to the verdict, a
rational finder of fact could have found the essential elements of the crime of aggravated kidnapping
beyond a reasonable doubt. We, therefore, find the evidence to be sufficient to sustain the conviction
under a legal sufficiency review.

 We further find the evidence in this case to be factually sufficient to support the verdict. 
Texas law establishes that the jury is the judge of fact in a criminal proceeding. (9) Accordingly, we
are to defer to the jury's resolution of questions of conflicting evidence. Moreover, when the
evidence is in "fair equipoise" (meaning that a rational juror could either find for or against a
proposition), any one of the conclusions should be upheld by a reviewing court. Goodman v. State,
66 S.W.3d 283, 286 n.4 (Tex. Crim. App. 2001). 

 While Friedman's testimony alone is sufficient to establish the crime of aggravated
kidnapping beyond a reasonable doubt, the record contains corroborative evidence of this testimony
as well. Although an important part of Crews's defense centered around the contention that he and
Friedman had not gone to Ladonia on the weekend that she claimed the offenses had taken place, the
record reflects that Melissa Earle, a friend of Friedman, testified that she watched Kenzie for the
weekend while Friedman and Crews went to Ladonia. In addition, Schodowski testified that
Friedman confided in her after the kidnapping and that Schodowski assisted Friedman in filing
criminal charges in Fannin County. 

 Finally, Friedman's testimony was corroborated by the December 2006 records of Crews's
cell phone activities. Whereas Crews's cell phone records revealed that there had been numerous
calls both to and from Friedman's number during the first, third, and fourth weekends of December,
they showed a distinctly different pattern on the weekend of December 8, 9, and 10. On Friday,
December 8, all calls between Friedman and Crews ceased after 5:49 p.m. and those calls did not
resume until 2:08 p.m. on Sunday, December 10. This is consistent with Friedman's testimony that
Crews picked her up on that Friday evening, deprived her of her cell phone once they reached
Ladonia, and did not return the cell phone until he returned her home the following Sunday
afternoon.

 Friedman's trial testimony was consistent with her statement given to peace officers almost
two years prior to trial. Although Crews chose to not testify, the jury was permitted to watch his
recorded interview with law enforcement officers. Having listened to all of the evidence, it was the
jury's task to weigh this evidence and draw all reasonable inferences therefrom. Arzaga v. State, 86
S.W.3d 767, 778 (Tex. App.--El Paso 2002, no pet.). The trier of fact is free to believe or disbelieve
part or all of a witness's testimony. Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). 
We will not second-guess the jury on its determination, as great deference is to be accorded the
verdict. Roberts, 220 S.W.3d at 524. Here, the evidence in support of the verdict is neither so weak
that the verdict is clearly wrong or manifestly unjust, nor is the jury's finding against the great weight
and preponderance of the conflicting evidence. The evidence is factually sufficient to support the
conviction. 

 We overrule Crews's legal insufficiency and factual insufficiency points of error.

 B. Extraneous Misconduct Evidence

 Crews complains of the admission of extraneous misconduct evidence. The evidence in
question pertains to (1) other crimes with which Crews had been charged in Dallas and in Tarrant
County with similar crimes against other women and (2) the history of abusive and threatening
behavior with Friedman, pre-dating the December 2006 weekend. We will address the extraneous
Dallas and Tarrant County crimes in the section below, as the jury was informed of that information
via the recorded interview of Crews by Wayne Walker, an investigator for the Fannin County
Sheriff's Office.

 The decision to admit or exclude evidence is reviewed under an abuse of discretion standard. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). An abuse of discretion occurs
when the trial court acts "without reference to any guiding rules and principles." Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Said another way, a trial court abuses its
discretion when it acts arbitrarily and unreasonably. Reynolds v. State, 227 S.W.3d 355, 371 (Tex.
App.--Texarkana 2007, no pet.). So long as the court's ruling lies within the zone of reasonable
disagreement, it will not be disturbed on appeal. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex.
Crim. App. 2001).

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person
in order to show action in conformity therewith. Tex. R. Evid. 404(b); Montgomery, 810 S.W.2d
at 386 (op. on reh'g). However, extraneous offense evidence which is relevant apart from its
tendency "to prove the character of a person in order to show action in conformity therewith" may
be admissible. Tex. R. Evid. 404(b). (10) So long as such evidence "logically serves 'to make . . . more
probable or less probable' an elemental fact; where it serves 'to make . . . more probable or less
probable' an evidentiary fact that inferentially leads to an elemental fact; or where it serves 'to make
. . . more probable or less probable' defensive evidence that undermines an elemental fact," it is
admissible. Montgomery, 810 S.W.2d at 387. The determination of whether extraneous-offense
evidence has relevance apart from character conformity as required by Rule 404(b) is a question for
the trial court. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court is to
be accorded the same deference in making this determination as it is in making any other relevancy
determination. Montgomery, 810 S.W.2d at 391.

 At trial, the State offered evidence of five instances of extraneous misconduct under Rule
404(b) (11) to show Crews's intent to inflict bodily injury, violate, or abuse Friedman sexually or to
terrorize her. The trial court initially sustained Crews's Rule 404 objection to the introduction of
this evidence. Crews then cross-examined Friedman, and in doing so, questioned her in detail about
the incidents that occurred during the weekend in Ladonia and about the letter written by Friedman
asking that charges against Crews be dropped (and claiming she was manipulated by Schodowski
into filing the charges). The State then re-offered the extraneous offense testimony to show intent (12)
and motive (13) as well as to rebut the defensive theory of manipulation or fabrication regarding the
events that occurred in Ladonia, as such events were claimed to be (1) either a complete fabrication
on the part of Friedman or (2) the result of the manipulation of Friedman by Schodowski to invent
the claimed occurrences as retaliation against Crews. Again, Crews objected on the basis of Rules
403 and 404 of the Texas Rules of Evidence. Tex. R. Evid. 403, 404. The court admitted the
evidence on the rationale that (1) such evidence is probative of the intent to terrorize and (2) such
evidence rebuts the defensive theory of fabrication or manipulation.

 Evidence of extraneous misconduct is admissible to show an individual's culpable mental
state at the time of the offense if such mental state cannot be inferred from the conduct itself. 
Morgan v. State, 692 S.W.2d 877, 880 (Tex. Crim. App. 1985). The ultimate issue in a kidnapping
offense is the abduction of the victim, i.e., the result. See Phillips v. State, 597 S.W.2d 929, 936
(Tex. Crim. App. [Panel Op.] 1980). Therefore, the offense of kidnapping is a result-oriented
offense. Gonzales v. State, 270 S.W.3d 282, 288 (Tex. App.--Amarillo 2008, pet. ref'd). By
extension, aggravated kidnapping is also a result-oriented offense which raises the level of
culpability in a kidnapping by the addition of an aggravating circumstance, a specific intent defined
by statute, being present at the time of the abduction. Id. In this regard, the statute requires the
presence of a culpable mental state at the time of the abduction. (14) Phillips, 597 S.W.2d at 936. 
Abduction occurs when a person is restrained with intent to prevent her liberation by secreting or
holding her in a place where she is not likely to be found or by using or threatening to use deadly
force. (15) Here, Friedman was restrained without her consent when Crews confiscated her cell phone
and refused to take her home after having been requested to do so. The intent to terrorize, harm, or
abuse Friedman must have been present prior to or at this particular time. The State bore the burden
of proof beyond a reasonable doubt to show the requisite intent at the time of the abduction. This
is not a scenario in which intent at the time of abduction can be inferred from the ultimate
commission of bodily injury, sexual abuse, or the infliction of terror upon Friedman, as those actions
had yet to occur. Thus, evidence of extraneous misconduct prior to the abduction is relevant apart
from showing character conformity because it makes more probable the elemental fact of Crews's
intent at the time of the abduction. See Montgomery, 810 S.W.2d at 387. 

 The extraneous misconduct evidence was further admitted to rebut the defensive theory of
fabrication or manipulation. The Texas Court of Criminal Appeals recently decided, in Bass v. State,
270 S.W.3d 557 (Tex. Crim. App. 2008), that extraneous offense evidence may be admitted to rebut
a fabrication defense. Bass involved the conviction of a church pastor for indecency with a child. 
The allegations were denied as never having occurred. Extraneous offense evidence that Bass
molested two other girls on church property was admitted on the theory that such evidence tended
to rebut the defensive theory of fabrication. Id. at 562-63. The court in Bass reasoned that "[i]t is
subject to reasonable disagreement whether this extraneous-offense evidence made these defensive
theories less probable." Id. at 563 (citing Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001)) (issue turns on whether extraneous offense evidence has noncharacter-conformity relevance
by rebuttal of defensive theory or making less probable defensive evidence that undermines an
elemental fact). Here, the issue of whether the extraneous misconduct evidence made more or less
probable Crews's defensive theory of fabrication or manipulation is, at the least, subject to
reasonable disagreement. Because the evidence of extraneous misconduct was probative of issues
other than character conformity, it was admissible, assuming Rule 403 (16) does not otherwise bar its
admission. See Morgan, 692 S.W.2d at 880. 

 Regarding the application of Rule 403 to extraneous misconduct evidence, it has been
reasoned that "the greater the State's need to resort to extraneous offenses to prove up some material
issue in the case, the higher will be the probative value of that offense in relation to its potential for
prejudice." Id. at 880 n.3. The State's need here is fairly substantial since, whether contested or not,
the requisite intent element of the offense must be proved beyond a reasonable doubt. Here, intent
can be inferred from the acts of abuse, assault, and the terrorizing of Friedman, but not necessarily
at the time of the abduction. Where intent cannot be inferred from the act itself (and specifically at
the time the intent must exist), intent will almost always have to be established by showing the
commission of similar acts. Intent may then be inferred from the fact that such acts are repeated. 
Id. The evidence of extraneous misconduct in this case naturally leads to the heightened probability
of the essential element of intent. This factor militates in favor of admission of the evidence. 
Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (citing Montgomery, 810 S.W.2d
at 389-90). 

 When one considers Friedman's testimony which described in great detail the nightmarish
events of the weekend in Ladonia, it is doubtful that the evidence of extraneous misconduct had the
potential of impressing the jury in "some irrational but nevertheless indelible way." Santellan, 939
S.W.2d at 169. We further note that only a small percentage of the time expended in the four-day
jury trial was devoted to mention of the extraneous offenses. This factor also militates in favor of
admission of the extraneous misconduct evidence. 

 Finally, and as discussed above, the extraneous misconduct evidence is probative of Crews's
intent to terrorize, sexually abuse, and inflict bodily injury upon Friedman. Because the trial court's
decision to admit the extraneous offense evidence is within the zone of reasonable disagreement,
there was no abuse of discretion. 

 This point of error is overruled. (17)
 

 C. Crews's Noncustodial Interrogation

 In March 2008, Crews gave a noncustodial, voluntary statement to Walker, an investigator
with the Fannin County Sheriff's Office. The evidence, a video recording of the interview, was
admitted over Crews's objections. The dialogue leading to the introduction of this piece of evidence
was relatively short:

 [THE STATE]: I'll offer State's 18, Your Honor.

 

 [DEFENSE COUNSEL]: I am going to object to the admission of this
evidence, interview made without an attorney. There is no indication that he was
advised of his rights not to make this statement. It was an out-of-court statement. 
It is not offered in an attempt to impeach the defendant's statement. It is irrelevant. 
It is immaterial. 

 

 THE COURT: Mr. Setterberg, what's the State's response as to the
defendant's objection as to 38.22 or 38.23 being given?

 

 [THE STATE]: I'll proffer some more testimony, if I may, Your Honor.

 

 THE COURT: Okay. If that's the only objection, I will sustain at this time. 
If you will -- 


 . . . .


 [Video recording was reviewed]

 

 THE COURT: -- do you have any other information that you want the Court
to review? I've only watched it for probably five, ten minutes, but from the first part
of the exhibit, it's apparent the 38.22 -- 

 

 [DEFENSE COUNSEL]: Yes, Your Honor.


 THE COURT: -- warning was given and the defendant affirmatively
indicated he did want to waive his rights and visit with the law enforcement, and I
believe that was -- 

 

 [DEFENSE COUNSEL]: I have nothing else.

 

 THE COURT: Okay. Then we are going to give you all the balance of the
break that we gave to the jurors . . . . 


 Crews argues that because a relevance objection was made to the entire exhibit (as opposed
to the portions referring to extraneous offenses), the proponent must satisfy the trial court that the
extraneous offense evidence has relevance apart from its character conformity value. However,
Crews never brought to the attention of the court the fact that the recorded interview included
conversations and statements regarding Crews's prior arrest in 2001 in Dallas for a domestic
disturbance and in 2002 in Tarrant County for aggravated assault. Nor did Crews bring to the trial
court's attention the fact that Walker referred to the prior arrests several times in the interview and
stated that Crews was guilty because of the similarities in this case to the charges in Dallas and
Tarrant County. Walker also made the following statements during the interview: "So what you are
telling me is that you have a history for this?"; that "you were charged for basically the same thing
in Tarrant County"; and that "the statistical chances" of Stephanie Friedman and other women lying
are "astronomical." 

 During the course of the interview, Walker told Crews that he reviewed the police report
from the Tarrant County case and that Friedman's written statement "looks just like the offense
report from Tarrant County." Walker went on to say that Friedman would not have received a
protective order against Crews unless her statements were true because it "is impossible for someone
like Stephanie to make up what is in her statement." 

 Finally, Walker made the statement several times during the course of the interview that
Crews exhibited "signs of deception." 

 On appeal, Crews complains of (1) the admission of extraneous offense evidence via the
recorded interview, in which Crews's previous charges in domestic matters were discussed and
(2) the purported expert testimony of Walker, whose statements and comments about the "signs of
deception" concern specialized knowledge, thereby implicating Rule 702 of the Texas Rules of
Evidence. See Tex. R. Evid. 702.

 At trial, however, none of these statements or conversations were brought to the court's
attention when the State sought to admit the recorded interview into evidence. Rather, Crews's
primary objection was that he was not advised of his right to counsel or of his right to remain silent
prior to giving the statement. The court reviewed the first five to ten minutes of the interview and
determined that Crews was, in fact, advised of his rights. (18)

 When the court specifically inquired about other information the defense wanted the court
to review, no additional information was forthcoming. The essential question, therefore, is whether
the objection to the introduction of the recorded interview as hearsay, and as irrelevant and
immaterial was sufficiently specific to preserve for review (1) the issue of whether the statement
contained inadmissible information regarding prior convictions and statements by Walker that
Crews's actions in this case were in conformity with his past behavior, as reflected by the Tarrant
County case, and (2) the issue of whether Walker's repeated statements concerning the "signs of
deception" was inadmissible expert testimony under Rule 702 of the Texas Rules of Evidence. 
Crews relies on Montgomery, 810 S.W.2d at 387, for the proposition that if an opponent of
extraneous offense evidence objects on grounds of relevancy, the proponent of the evidence must
then satisfy the trial court that the extraneous offense evidence has relevance apart from its character
conformity value.

 Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not
preserved for appeal unless it was made to the trial court "by a timely request, objection, or motion"
that "stated the grounds for the ruling that the complaining party sought from the trial court with
sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were
apparent from the context." (19) Likewise, under Rule 103 of the Texas Rules of Evidence, error may
not be predicated upon a ruling which admits or excludes evidence unless "a timely objection or
motion to strike appears of record, stating the specific ground of objection, if the specific ground was
not apparent from the context." (20)

 The policies underlying the requirement of specific objections are: (1) to inform the trial
judge of the basis of the objection to permit the judge to make a ruling; and (2) to provide opposing
counsel an opportunity to respond to the complaint. Resendez v. State, No. PD-0917-08, 2009
WL 3365656 (Tex. Crim. App. Oct. 21, 2009); Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim.
App. 1977). There are no technical considerations or form of words to be used to preserve error on
appeal. "[A]ll a party has to do to avoid forfeiture of a complaint on appeal is to let the trial judge
know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge
to understand him at a time when the trial court is in a proper position to do something about it." 
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

 Based on the exchange above, the trial court at least believed that it understood the nature
of Crews's objections: the alleged failure to advise Crews of his rights before engaging in a
noncustodial interrogation and that the video recording was not relevant to the issue on trial. It also
appears, from the context of the exchange, that is what defense counsel was talking about. Given
the circumstances of this objection, and the manner in which it was made, there was no indication
that the trial court should have believed that the relevance complaint was specifically based upon the
mention and/or discussion of prior crimes and/or prior bad acts and/or statements by Walker
regarding "signs of deception" in the recorded interview with Crews. The court addressed the issue
of whether there was any other evidence the defense wanted the court to review. After the trial court
concluded that the recording indicated that Crews was advised of his rights prior to beginning the
interview with Walker, defense counsel stated, "I have nothing else." The opportunity presented
itself for Crews to clarify the objection and to specifically state the basis of it to have involved the
mention of extraneous offenses. It was Crews's responsibility to do all that was necessary to bring
to the attention of the trial court the specific evidentiary rule in question and its precise and proper
application to the evidence in question. Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App.
2005). This was not done.

 Crews's reliance on Montgomery is misplaced; in that case, Montgomery was tried
simultaneously under two indictments for indecency with a child committed against two of his three
young daughters. Montgomery's former wife sought to testify regarding extraneous misconduct on
the part of Montgomery involving inappropriate sexual conduct directed toward his children. Prior
to admission of this testimony, Montgomery's counsel objected "on the grounds of relevancy and
also on the grounds this is getting into extraneous offenses." Montgomery, 810 S.W.2d at 393
(emphasis added). In contrast, here, Crews failed to clearly and concisely advise the court of his
complaint in order to permit the court the opportunity to act on the now-expressed complaint. 
Accordingly, Crews's claim of error with respect to the admission of the recorded interview with
Walker was not preserved for appellate review. 

 This point of error is overruled.

 D. The Doctrine of Cumulative Error

 In his final appellate point, Crews argues that he was denied a fair trial because of the
numerous errors committed at trial and their associated harm. Because we find no abuse of
discretion on the part of the trial court (and thus no error), we need not discuss any potential
application of the doctrine of cumulative error.

 This point of error is overruled.

IV. CONCLUSION

 The evidence is both legally and factually sufficient to support conviction. Further, there was
no abuse of discretion in the admission of extraneous misconduct evidence. Moreover, there was
a failure to preserve error with respect to the specific complaints of extraneous offense evidence and
statements by Walker regarding Crews's exhibition of "the signs of deception," in Walker's
recorded, noncustodial interrogation of Crews. Accordingly, we affirm the judgment of the trial
court.



 Bailey C. Moseley

 Justice


Date Submitted: December 7, 2009

Date Decided: December 22, 2009


Do Not Publish
1. Tex. Penal Code Ann. § 20.04 (Vernon 2003).
2. The couple left Greenville for Ladonia in the late afternoon on a Friday; Crews returned
Friedman to her home on Sunday afternoon. 
3. Friedman initially testified the events described here took place on the weekend before
Christmas in 2006; she then testified that it could have been earlier in the month. Finally, with the
assistance of cell phone records, Friedman determined the weekend to have been
December 8 through 10, 2006. 
4. Crews lived with his parents in 2006. 
5. Schodowski is a former girlfriend of Adam Crews. Crews contends Schodowski influenced
and manipulated Friedman into filing charges against him in retribution for Crews's and
Schodowski's broken relationship. 
6. The statement was given in March 2008. An audio recording of the statement was
introduced over Crews's objection at trial.
7. At trial, however, Friedman testified against Crews. She no longer claimed she was
manipulated to do anything.
8. "Bodily injury" means "physical pain, illness, or any impairment of physical condition." 
Tex. Penal Code Ann. § 1.07(8) (Vernon Supp. 2009). 
9. See Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).
10. Rule 404(b) provides that:


 Evidence of other crimes, wrongs or acts is not admissible to prove the character of
a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. . . .


Tex. R. Evid. 404(b).
11. The extraneous misconduct evidence was introduced in the form of testimony from
Friedman, and included a recount of several incidents which had previously taken place between
Crews and Friedman. On one such occasion, Crews was driving with Friedman as his passenger
when he pulled in front of an eighteen-wheeler truck as if to hit it head on. Crews did this because
Friedman refused to tell him that she loved him and wanted to be with him. After Friedman told
Crews what he wanted to hear, he pulled the car back into its rightful lane of traffic. During that
same escapade, Friedman, still terrorized over the near head-on collision, asked Crews if he was
going to kill her. Crews replied that if he was going to kill her, he would pull onto a dirt road. 
Shortly thereafter, Crews pulled his car onto a dirt road. During the ordeal in the car, Friedman
attempted to escape by opening the passenger door and running on two different occasions. Each
time, Crews pulled Friedman back inside of the car by grabbing her arm, shirt, or hair. Crews kept
Friedman hostage in his car for several hours. 

 Another such incident about which Friedman was permitted to testify involved an argument
between Friedman and Crews at Friedman's apartment. The argument escalated when Friedman told
Crews to leave. At that point, Crews locked the doors of the apartment and stated that he was going
to "'F' something up in the apartment." Friedman thought Crews was referring to her. Crews then
spit in her face, and Friedman ran to the other room where Crews restrained her on the bed and
threatened her with a knife. 


 On yet another occasion, Crews told Friedman that he killed eight people for breaking into
his house. He told Friedman that he stalked them, found them, and killed each one of them. Around
the same time, Crews told Friedman that he was violent and that he would be violent with her. 
Finally, Friedman testified that Crews threatened to kill himself in front of Kenzie. This threat was
made after Friedman told Crews that she did not want to be with him. 
12. The evidence was offered to prove Crews's intent at the time the abduction took place. The
State conceded that intent to commit bodily injury or to terrorize or sexually abuse can be inferred
when those acts occur; because intent must be present at the time of abduction, however, the State
maintained that the prior offenses are indicative of intent to commit those acts prior to or at the time
of the abduction.
13. The State's primary motive theory was Crews's exhibition of similar behavior in the past
to force a reconciliation with Friedman. The secondary motive theory was Crews's exhibition of
similar behavior in the past in retaliation for Friedman's perceived unfaithfulness and to control
Friedman. Thus, it can be inferred that Crews's motive in the kidnapping was to force a
reconciliation with Friedman, to retaliate against her, and to force Friedman to remain under his
control.
14. The requirement of intentional and knowing conduct at the time of the abduction is clear: 
"(a) A person commits an offense if he intentionally or knowingly abducts another person with the
intent to: . . . (4) inflict bodily injury on him or violate or abuse him sexually; (5) terrorize him or
a third person; . . . ." Tex. Penal Code Ann. § 20.04 (Vernon 2003).
15. Tex. Penal Code Ann. § 20.01(2)(A), (B).
16. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." 
Tex. R. Evid. 403.
17. Crews objected to the admission of the extraneous misconduct evidence, but failed to
request a limiting instruction at the introduction of the evidence. A party opposing evidence has the
burden of requesting the limiting instruction at the introduction of the evidence. Hammock v. State,
46 S.W.3d 889, 894 (Tex. Crim. App. 2001). When evidence admissible for a limited purpose is
admitted and no limiting instruction is requested, the evidence is admitted for all purposes. Tex. R.
Evid. 105(a); Hammock, 46 S.W.3d at 893 ("[I]n the absence of such request[,] the court's action
in admitting such evidence without limitation shall not be a ground for complaint on appeal."). In
this case, a limiting instruction was included in the charge; such was not warranted as the evidence
of extraneous misconduct was admitted for all purposes. Hammock, 46 S.W.3d at 895.

18. It is apparent from the record that the trial court admitted the interview once it was
determined that Crews was fully advised of his rights; the record does not indicate, however, that
Crews obtained a ruling on his objections of hearsay, immateriality, and relevancy. 
19. Tex. R. App. P. 33.1(a).
20. Tex. R. Evid. 103(a)(1).