NUMBER 13-03-00262-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


ROBERTO SOLIS,                                                                            Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

                                                                       
                                                

   On appeal from the 404th District Court of Cameron County,
Texas.

                                                                                                                       


                       MEMORANDUM OPINION

 

               Before Justices Hinojosa, Yañez,
and Rodriguez

                         Memorandum
Opinion by Justice Hinojosa

 








A jury found appellant, Roberto Solis,
guilty of the offense of indecency with a child and assessed his punishment at
six years= imprisonment.  In five issues, appellant contends (1) the
evidence is legally and factually insufficient to support the jury=s finding of intent to arouse or gratify
sexual desire, (2) the trial court erred by refusing to grant his motion for
mistrial after the prosecutor made an improper jury argument, (3) the trial
court violated the Texas Constitution when it denied his request for bail
pending appeal, and (4) the trial court erred by admitting into evidence the
videotaped out-of-court statements of the complaining witness.  We affirm.

                                            A.  Sufficiency
of the Evidence

In his first and second issues, appellant
contends the evidence is legally and factually insufficient to support the jury=s finding of intent to arouse or gratify
sexual desire.

The standard of review for challenges to the legal
and factual sufficiency of the evidence is well settled.  See Jackson v. Virginia,
443 U.S. 307, 319 (1979) (legal sufficiency); Young v. State, 14 S.W.3d
748, 753 (Tex. Crim. App. 2000) (legal sufficiency); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency); Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (legal and factual
sufficiency).

A person commits the offense of indecency
with a child if, with a child younger than seventeen years and not the person's
spouse, the person:

(1)       engages in sexual contact with the child
or causes the child to engage in sexual contact; or

 

(2)       with intent to arouse or gratify the
sexual desire of any person:

 

(A)       exposes the person's anus or any part of
the person's genitals, knowing the child is present; or

 

(B)       causes the child to expose the child's
anus or any part of the child's genitals.

 








Tex. Pen. Code Ann. ' 21.11(a) (Vernon 2003).  The indictment alleged that appellant, with
the intent to arouse or gratify his sexual desire, intentionally or knowingly
engaged in sexual contact with C.S. by touching the genitals of C.S., a child
younger than seventeen years and not the spouse of appellant, with appellant=s hand.

Appellant argues the evidence is
insufficient because the record shows that any touching that occurred was only
over clothing.  Appellant asserts that,
although the current version of the statute defines Asexual contact@ to include touching through clothing, the
statute in effect at the time he was alleged to have committed the offense did
not.  See Act of June 13, 2001,
77th Leg., R.S., ch. 739, '1, 2001 Tex. Sess. Law. Serv. 1378 (current
version at Tex. Pen. Code Ann. ' 21.11(c) (Vernon 2003)).

However, even before the statute was
amended, case law held that Asexual contact may be committed even though
the victim is fully clothed at the time of the sexual contact.@  In
re J.S., 35 S.W.3d 287, 292 (Tex. App.BFort Worth 2001, no pet.); cf. Resnick v.
State, 574 S.W.2d 558, 559‑60 (Tex. Crim. App. [Panel Op.] 1978)
(concluding that touching over clothing sufficient to find sexual contact under
public lewdness statute); Miles v. State, 247 S.W.2d 898, 899 (Tex.
Crim. App. 1952) (holding flesh to flesh contact not required in offense of
fondling); Guia v. State, 723 S.W.2d 763, 764 (Tex. App.BDallas 1986, pet. ref'd) (AThe mere imposition of a layer of fabric
between a person's hand and the genitals of another did not prevent the
occurrence of sexual contact.@). 
Accordingly, we conclude that evidence of touching through clothing is
sufficient to establish Asexual contact.@








Appellant next argues the evidence is
insufficient to show intent to arouse or gratify sexual desire because the
record contains no evidence of Anakedness, erection, facial gestures,
verbalization, [or] ejaculation accompanying the touching.@ 
Intent is a question of fact and may be inferred from the acts, words,
and conduct of the accused.  Wallace
v. State, 52 S.W.3d 231, 234 (Tex. App.BEl Paso 2001, no pet.) (citing Manrique
v. State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)).  Under section 21.11(a), Athe requisite specific intent to arouse or
gratify the sexual desire of any person can be inferred from the defendant's
conduct, his remarks and all surrounding circumstances.@  McKenzie
v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981) (citing Bowles v.
State, 550 S.W.2d 84, 85‑86 (Tex. Crim. App. 1977); Turner v.
State, 600 S.W.2d 927 (Tex. Crim. App. 1980)); see Lewis v. State,
676 S.W.2d 136, 139 (Tex. Crim. App. 1984) (AThe intent element in this case can only be
proved by inferences from the evidence presented.@).  No
oral expression of intent is necessary, nor is visible evidence of sexual
arousal required.  McKenzie, 617
S.W.2d at 216.








Moreover, the Texas Court of Criminal
Appeals has determined that in considering the sufficiency of the evidence to
show intent to arouse or gratify a defendant's sexual desire, Aevidence of a common pattern of similar acts
is admissible as tending to prove the intent.@  Ranson
v. State, 707 S.W.2d 96, 97 (Tex. Crim. App. 1986) (citing Ferguson v.
State, 579 S.W.2d 2 (Tex. Crim. App. 1979)); Morgan v. State, 692
S.W.2d 877, 880 (Tex. Crim. App. 1985). 
Under circumstances where Asuch an intent cannot be inferred from the
act itself . . . other evidence relevant to that intent, even though such
evidence constitutes an extraneous transaction or offense, will be more
probative than prejudicial.@  Morgan,
692 S.W.2d at 880-81 (A[P]recisely because appellant's conduct
alone was as consistent with accident as with a specific lascivious intent, any
extraneous act committed by appellant which would tend otherwise to demonstrate
such intent would be admissible in the instant case.@).  AThe inference to be drawn from the
extraneous acts is not that appellant is a child molester by nature, and
therefore more than likely molested complainant.@  Id.
at 882.  What is sought is an objective
inference: while each instance may be attributable to accidental touching, the
repetition of similar conduct makes it less likely Athat each such touching occurred
accidentally, and consequently, the more likely that in touching complainant in
the instant offense, appellant harbored a guilty intent.@  Id.
at 881-82.








C.S. testified appellant was the father of
her best friend, G.S.  C.S. said she
would visit appellant=s house frequently to play with G.S. and
stayed overnight a couple of times.  When
C.S. would visit, appellant would tell her to give him a kiss, and when she
went to kiss his cheek, he would turn his head so she would kiss him on the
mouth.  On the night in question, C.S.
was approximately eleven years old and was spending the night at appellant=s house with G.S. and G.S.=s cousin, A.V.  They planned to go to the beach the next
day.  C.S. testified that after the three
girls had gone into G.S.=s room to go to sleep, appellant came in
with a beer in his hand and closed the door behind him.  He went over to the bed and with his free
hand reached under the blanket that was covering C.S.  She testified that she was wearing a T-shirt
and underwear only.  Appellant touched
her stomach and Athen went down to [her] private part.@  C.S.
said that appellant=s hand moved Aslowly, just went slowly down,@ and she demonstrated to the jury a rubbing
motion.  C.S. testified that she pushed
appellant away, and he came back and Atried to do it again.@  When
she pushed him away a second time, appellant left.  C.S. said that appellant touched her over her
underwear only, he was not tickling her, and he never said anything.  C.S. waited until everyone was asleep and
then called home for someone to pick her up. 
She said that she did not tell anyone what had happened immediately
because she was scared.  However, the
following week at school, she had a fight with G.S. and talked to the school
principal about what had happened with appellant.  She further testified that she did not think
the touching was accidental.

During cross examination, C.S. admitted that
when appellant first came into the room, the mood was more playful, and the
girls were kicking and pushing appellant before they all went to bed.  She acknowledged that maybe appellant was
trying to tickle her at first when he reached under the blanket, but said that
when she was not ticklish, the mood changed and that was when his hand moved
down to her Aprivate part.@

The school principal, Aida Stevens,
testified that C.S. came into her office on September 2, 1998, and told her
what happened with appellant.  She said
that after talking with C.S., she called C.S.=s mother and Child Protective Services.  Stevens said that when she spoke with her,
C.S. appeared to be upset.  She later
called both C.S. and G.S. into her office separately to discuss the issue
because they were having arguments at school.

C.S.=s mother, Maria, testified that appellant
was the father of G.S., her daughter=s best friend.  She said that C.S. frequently spent the night
at appellant=s home with G.S. on Saturday nights and
would attend church with appellant and his family on Sunday morning.  She explained that on the night in question,
C.S. went over to appellant=s house at approximately 7:00 p.m. and
called to get picked up around 10:00 p.m. 
This was the only time that C.S. had ever called to get picked up early,
and she did not want to say why.  Maria
only found out that something more serious had happened when she was contacted
by the school.  Maria testified that
after appellant=s wife, Perla Solis, spoke with the school
principal, she went to Maria=s house and asked her to drop the charges.








A.V. testified that everyone was laughing
when appellant first came into the room. 
Appellant tickled C.S. and G.S., but A.V. moved away because she did not
want to be tickled.  When she moved away,
A.V. turned her back to appellant and the other girls.  After appellant left, C.S. got very serious
and was upset; C.S. then said that something had happened.  She did not remember C.S. being around the
next day or going to the beach.

The State also called D.T., appellant=s granddaughter, to testify.  D.T. testified that appellant touched her Ain a place she shouldn=t have been touched.@  She
said that for a period of time when she was about nine years old, she would go
to appellant=s house on Friday nights with her
family.  D.T. said that when the rest of
the adults were outside and she would go inside to get something, in the living
room of appellant=s trailer, he would touch her front private
part over her clothes with his hand. 
D.T. testified that it happened more than once, and she also
demonstrated a rubbing motion.  D.T. said
that it made her feel very uncomfortable and she did not like it, but she was
afraid to tell anyone.  She finally told
her father because he asked her if she had been touched.

Appellant=s wife, Perla Solis, testified in his
defense.  She said that when appellant=s family would come over on Friday nights,
she was usually in the kitchen cooking or doing dishes while everyone else was
outside.  She would go outside only
occasionally, and appellant would go inside only occasionally.  Perla testified that she remembered C.S.
spending the night at the house only once, on the night in question.  She said that G.S. had told her that she did
not like C.S. very much because she did not have very good character.  Perla admitted talking to C.S.=s mother, but said she only went to see what
the problem was.  She denied trying to
convince Maria of anything.








Appellant=s daughter, G.S., testified that on the
night C.S. was at her house, after the girls had gone to her room to go to
sleep, C.S. wanted to know when they were going to the beach.  G.S. told her to ask appellant, and C.S. went
into the living room to get him. 
Appellant came back to the room with C.S. and told the girls they were
leaving in the morning.  As he was about
to leave, C.S. playfully kicked appellant in the ankle and then ran to the bed
and hid under the covers.  Appellant
followed her and started tickling her, and then G.S. got up and started
tickling appellant; however, appellant did not divert his attention from
C.S.  G.S. said they were all playing
around and laughing, no one was uncomfortable, and when appellant left, the
girls went to sleep.  G.S. said that C.S.
did not leave that night; the next day they all went to the beach.  G.S. testified that she did not notice
anything unusual and only became aware of a problem when she went to
school.  According to G.S., after she had
a conversation at school with C.S., which G.S. later discussed with her mother,
she decided she did not want to be C.S.=s friend anymore.  C.S. got mad at her, and that is when the
allegations arose.  After that, C.S.
wanted to stay over again, but appellant would not let her.  G.S. denied that C.S. used to spend the night
frequently, that C.S. ever told her anything had happened, or that she was ever
called into principal Stevens= office to discuss it.

G.S. further testified that when D.T. was
over with the rest of the family, all of the kids were always together, and
that Perla was usually in the kitchen. 
She never recalled D.T. being upset or disturbed at the house, or
anything unusual or odd happening between D.T. and appellant.

Finally, A.H., one of appellant=s granddaughters, testified that on the
Friday nights when the family would gather at appellant=s house, the kids would be outside playing,
and Perla would be inside cooking. She said that she never noticed anything
unusual about D.T.=s behavior.








The jury, as the sole judge of the credibility of
the witnesses and the weight to be given their testimony, is free to accept or
reject all or any part of the testimony of any witness.  Tex.
Code. Crim. Proc. Ann. art. 38.04
(Vernon 1979); Cain v. State, 958 S.W.2d 404, 408‑09 (Tex. Crim.
App. 1997);  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982).  In determining the sufficiency
of the evidence to show appellant's intent, Awe must presume that the trier of fact
resolved any conflict in testimony in favor of the prosecution, and must defer
to that resolution.@ Jackson, 443 U.S. at 326; Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

After reviewing all the evidence in the
light most favorable to the verdict, we conclude that any rational trier of
fact could have found that appellant had the intent to arouse or gratify his
sexual desire beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at 753; see also Malik, 953 S.W.2d at 240.  In addition, after a neutral review of the
evidence, we conclude the evidence is not so weak as to be clearly wrong and
manifestly unjust, nor is there contrary evidence that makes the finding of
guilt against the great weight and preponderance of the evidence.  See Johnson, 23 S.W.3d at 11; see
also Malik, 953 S.W.2d at 240.   Accordingly,
we hold the evidence is legally and factually sufficient to support appellant=s conviction for the offense of indecency
with a child.

Appellant=s first and second issues are overruled.

                                                      B.  Jury
Charge Error

During closing argument, appellant objected
to part of the argument made by the State. 
The objection was sustained, and the trial court instructed the jury to
disregard the prosecutor=s statement. 
Appellant=s motion for a mistrial was denied.








In his third issue, appellant contends the
trial court=s instruction to the jury was inadequate to
cure the harm caused by the prosecutor=s improper argument.  While appellant raises this issue in the ASummary of the Argument@ at the beginning of his brief, the actual AArgument@ section of his brief does not address this
issue.  See Tex. R. App. P. 38.1(g), (h).  Because appellant does not support this issue
with (1) a clear and concise argument, (2) citation to authority, and (3)
citation to the record, we hold this issue is inadequately briefed.  See Tex.
R. App. P. 38.1(h).

Appellant=s third issue is overruled.

                                                            C.  Denial
of Bail

After the jury found him guilty, appellant
filed a motion to be released on bond during the pendency of his appeal.  The trial court denied the motion.

In his fourth issue, appellant contends that
article 44.04(b) of the Texas Code of Criminal Procedure, which governs bail
pending appeal, violates the Texas Constitution.  See Tex.
Code. Crim. Proc. Ann. art. 44.04(b) (denying bail pending appeal to
those convicted of (1) any felony where the punishment equals or exceeds ten
years= confinement or (2) an offense listed under
section 3g(a)(1), article 42.12 of the code of criminal procedure); see also
Tex. Const. art. 1, '11.








While there is an established constitutional
right to pre-trial bail, Athere is no federal or state constitutional
right to bail pending appeal.@  Dallas
v. State, 983 S.W.2d 276, 278 n.1 (Tex. Crim. App. 1998) (citing Stack
v. Boyle, 342 U.S. 1 (1951)). 
Moreover, the Texas Court of Criminal Appeals has specifically held that
article 44.04(b) is constitutional.  Lebo
v. State, 90 S.W.3d 324, 326, 330 (Tex. Crim. App. 2002) (determining that
those who are placed on ten years= community supervision may seek release on
bail pending appeal).

Appellant argues that article 44.04(b) is
unconstitutional as applied to him because there is no rational reason to
differentiate section 3(g) offenses from other offenses.  However, Ait is well settled that the Equal Protection
Clause allows the Legislature considerable leeway to enact legislation that may
appear to affect similarly situated people differently.@  Clark
v. State, 665 S.W.2d 476, 480 (Tex. Crim. App. 1984); Faerman v. State,
966 S.W.2d 843, 847 (Tex. App.BHouston [14th Dist.] 1998, no pet.).  AClassifications will not be set aside on
equal protection grounds if they are rationally related to a legitimate state
interest,@ so long as they do not interfere with the
exercise of a Afundamental@ right or place a burden on a Asuspect@ class. 
Clark, 665 S.W.2d at 480; Faerman, 966 S.W.2d at 847.  AThe right to appeal does not create a
suspect class or infringe on a fundamental right.@  Faerman,
966 S.W.2d at 847.

We consider the classification established
by the legislature in article 44.04(b) to be rationally related to a legitimate
state interest, Ai.e., the prevention of convicted felons from fleeing the jurisdiction and
escaping punishment during the pendency of their appeals.@  Cortez
v. State, 36 S.W.3d 216, 222 (Tex. App.BHouston [14th Dist.] 2001, pet. ref=d). 
While someone convicted of a section 3(g) offense may be no more likely
to flee the jurisdiction during the pendency of his appeal, Athe Legislature is justified in drawing and
redrawing a line between those that qualify for an appeal bond and those that
do not.@  See
id.  We consider a distinction based
on the type of offense committed to be Aa legitimate place for the Legislature to
draw that line.@  See
id.  

Appellant=s fourth issue is overruled.








                                                  D.  Admission
of Evidence

In his fifth issue, appellant contends the
trial court erred by admitting into evidence the videotaped out-of-court
statements of the complaining witness after she testified in person.

At trial, appellant objected primarily on
hearsay grounds.  On appeal, he glosses
over his hearsay argument, and asserts that the statements were Atestimonial@ and harmful because they Areiterated the testimony of the complaining
witness in this credibility contest.@

We review a trial court's admission or
exclusion of evidence under an abuse of discretion standard.  Montgomery v. State, 810 S.W.2d 372,
379‑80 (Tex. Crim. App. 1990).  An
abuse of discretion occurs when the trial court acts arbitrarily or
unreasonably,  without reference to
guiding rules or principles.  Id.
at 380.








Assuming that the trial court erred in its
admission of the videotaped statements, we would then proceed to review the
entire record to determine if the error was harmful.  See Tex.
R. App. P. 44.2(b); cf.  Brooks
v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding any error in
admission of hearsay testimony harmless in light of other properly admitted
evidence proving same fact).  However,
appellant did not request that the videotapes be included in the appellate
record, and they are not before us for review. 
It is the appellant=s responsibility in requesting the
preparation of the reporter=s record to designate the exhibits to be
included.  Tex. R. App. P. 34.6(b)(1). 
In light of the record before us, we cannot say that the trial court
abused its discretion by admitting into evidence the videotaped out-of-court
statements of the complaining witness or that the court=s admission of such evidence was
harmful.  See Rowell v. State, 66
S.W.3d 279, 282-83 (Tex. Crim. App. 2001). 
Appellant=s fifth issue is overruled.

The judgment of the trial court is affirmed.


 

FEDERICO G. HINOJOSA

Justice

 

Do
not publish.  See Tex. R. App. P. 47.2(b).

 

Memorandum
Opinion delivered and filed this

the
20th day of July, 2006.