NUMBER 13-05-183-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






ELISA ANN CHAPA, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 36th District Court


of San Patricio County, Texas.






MEMORANDUM OPINION ON REHEARING


 

Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion on Rehearing by Justice Rodriguez


 We issued our original opinion in this appeal on July 20, 2006. See Chapa v.
State, No. 13-05-183-CR, 2006 Tex. App. LEXIS 6219 (Tex. App. Corpus Christi July
20, 2006, no pet. h.) (not designated for publication). The State subsequently filed
a motion for rehearing. We now grant the State's motion for rehearing, withdraw our
previous opinion, and substitute the following opinion as the opinion of this Court.

 Appellant, Elisa Ann Chapa, was charged with intentionally or knowingly causing
serious bodily injury to her youngest daughter (victim) by burning her with a hair iron
and alternatively charged with recklessly causing serious bodily injury to the victim by
burning the victim with a hair iron. See Tex. Pen. Code Ann. § 22.04 (Vernon 2003
& Supp. 2006). A jury found appellant guilty of intentionally or knowingly causing
injury to a child. The jury sentenced appellant to seven years' confinement in the
Institutional Division of the Texas Department of Criminal Justice and assessed a fine
of $5,000. By two issues, appellant contends the evidence was factually and legally
insufficient to support her conviction. We affirm.

I. Background


 On May 19, 2004, appellant brought the victim to Sinton Pediatric Clinic with
a complaint of burns the child received on the back of her left thigh and calf. 
Appellant told the physician assistant that she had been in the bathroom and heard the
victim start crying, then ran to the bedroom, found the child hunched over with a
blanket around her legs, and found that she had been burned to the back side of her
leg by a hair straightener. The victim was sent to Driscoll Children's Hospital because
of the physician assistant's suspicions about how the burns occurred. In Driscoll's
emergency room, the victim was seen by Sivakumar Padmanabhan, M.D., Valerie
Curiel, a social worker on the Child Abuse and Resource Evaluation team, and a
forensic nurse examiner. Curiel spoke with appellant and her husband about what had
happened. Curiel did not interview the victim at that time because she was nonverbal. 
Appellant maintained the story that she had told previously to the physician assistant
at the pediatric clinic. Curiel examined the child's medical history and found a previous
burn injury that appellant said occurred a few months before when the victim was
jumping on the couch and either jumped off or fell off the couch and landed on a
curling iron. After conferring with the nurse and doctor, Curiel decided to contact law
enforcement and the Texas Department of Family and Protective Services (CPS) to
investigate.

 Leo Martinez, an investigator for the Sinton Police Department, and Robin
Arnold, a CPS caseworker, were called to Driscoll on May 19, 2004 for investigation
of the injuries to the victim. When asked how the victim received the burns, appellant
maintained the same story. Later that day, Investigator Martinez and Arnold met with
appellant and her husband at their residence to observe the site where the injury
occurred, take photographs, and attempt to recreate the accident; they were unable
to recreate the accident based on appellant's description of how it occurred. Appellant
was subsequently indicted and found guilty of injury to a child. This appeal ensued.

II. Sufficiency of the Evidence

 By two issues, appellant asserts that the evidence is factually and legally
insufficient to support her conviction. In her second issue, appellant argues that the
evidence is legally insufficient to support the finding of two elements of the offense: 
1) that appellant, herself, committed the offense; and 2) that appellant acted
intentionally or knowingly. In her first issue, appellant contends the evidence is
factually insufficient to support the element that she, herself, committed the offense.

A. Standard of Review

1. Legal Sufficiency

 In a legal sufficiency review, we consider all of the properly or improperly
admitted evidence in the light most favorable to the verdict and determine whether,
based on that evidence and reasonable inferences therefrom, a rational jury could have
found the accused guilty of the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003) (en banc). We measure the legal sufficiency
of the evidence by the elements of the offense as defined by a hypothetically correct
jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A
hypothetically correct jury charge is one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or
restrict its theories of liability, and adequately describes the particular offense for
which the defendant was tried. Id.

2. Factual Sufficiency

 We measure the factual sufficiency of the evidence in a jury trial by the
elements of the offense as defined by a hypothetically correct jury charge. See Adi
v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). In
conducting a factual sufficiency review, we view all of the evidence in a neutral light,
without favoring either party. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App.
2000) (en banc) (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996)). Evidence is factually insufficient only when the evidence as to an element is
so obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Id.
at 11. 

 Under both standards, "the jury is the exclusive judge of the credibility of
witnesses and of the weight to be given to testimony, and it is also the exclusive
province of the jury to reconcile conflicts in the evidence." Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc) (citing Jones v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996)); see Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979).

B. Applicable Law

 In order to prove that appellant committed the offense for which she was
convicted, the State had to prove that appellant intentionally or knowingly caused
serious bodily injury to the victim. (1) See Tex. Pen. Code Ann. § 22.04(a)(1) (Vernon
2003 & Supp. 2006). 

 Section 22.04 is focused on the result of the suspect's conduct which means
that, under said statute, a person acts intentionally when it is her conscious objective
or desire to cause serious bodily injury to a child, and a person acts knowingly when
she is aware that her conduct is reasonably certain to cause serious bodily injury to a
child. Beggs v. State, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980); see Tex. Pen.
Code Ann. § 6.03 (Vernon 2003). Intent may be inferred from circumstantial evidence,
such as the acts, words, and conduct of appellant. Guevara v. State, 152 S.W.3d 45,
50 (Tex. Crim. App. 2004). In addition, a jury may infer intent or knowledge based
on the occurrence of a previous similar injury. See Morgan v. State, 692 S.W.2d 877,
881-82 (Tex. Crim. App. 1985) (providing that the more often similar instances occur
with similar results, the more likely it is that an appellant harbored a guilty intent). 

 In a circumstantial evidence case, such as the instant case, it is not necessary
that every fact point directly and independently to the appellant's guilt; it is sufficient
if the conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances. See Guevara, 152 S.W.3d at 49 (citing Alexander v.
State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987); Russell v. State, 665 S.W.2d
771, 776 (Tex. Crim. App. 1983)).

C. Analysis

 At trial, the jury heard testimony from defense witnesses, including appellant
and appellant's sister, neighbor, and two other children. The jury also heard testimony
from the State's witnesses, which included appellant's husband and father-in-law, two
medical doctors, and a police investigator, among others.

 Appellant first testified regarding the victim's previous similar injury which
occurred approximately four months prior to the incident in question. Specifically, she
testified that she had been doing her oldest daughter's hair in the living room and that
the victim had been jumping on the sofa behind them. She also stated that she had
told the victim, "please stop, you're gonna fall," but that before she knew it, the
victim had jumped off the sofa and landed on a curling iron. She testified that when
she picked up the victim, the curling iron fell off of the victim. She stated that she
phoned a pharmacist and E.M.S. immediately after the incident and then took the
victim to Driscoll Children's Hospital. With respect to the incident that is the subject
of this appeal, appellant testified that she had used the hair iron in her bedroom the
morning of the injury and that she could not remember whether she had turned the hair
iron off after using it. She also stated that she was not in the bedroom with the victim
at the time of the incident, but instead had been in the bathroom at the time in
question. She stated that while she was in the bathroom, she heard the victim
scream, ran to the bedroom, turned on the light, found her hair iron stuck to the
victim's leg, and batted the hair iron off of the victim's leg. Appellant also testified
that she was the only adult at home with the victim and her two other children when
the incident occurred. She testified that after the incident, she called her husband's
parents' house twice to try to locate her husband. Appellant stated that when her
husband finally arrived at home she told him she did not "know whether to take [the
victim] to Driscoll's Hospital" and that "if we take [the victim] to Driscoll, I know
C.P.S. is going to get involved." Furthermore, the following exchange took place
during appellant's cross-examination:

 Q. Okay. Isn't it true that the day of May 18th when you called over
to - looking for Sammy [appellant's husband] that the first time
you called that was before [the victim] had gotten injured?


 A. No.


 Q. And that made you angry the fact he wasn't there?


 A. No. I didn't call - I knew where he was. When [the victim] got
hurt is when I called.


 Q. That made you angry not knowing where he was; isn't that true?


 A. I was just upset because I couldn't get hold of him. We only had
one phone, and I had the cell phone, and I needed him home right
away.


 Q. And because of that anger you hurt [the victim]; isn't that true?


 A. No, I would never hurt my daughter. No matter how angry I was
I would never take it out on my children.


 Q. [The victim] is yours and -


 A. And Sam's daughter, yes.


 Q. - Sam's daughter. The other two children have never had any
accidents like this.


 A. No. 


 The youngest of appellant's other two children, S.K.H., testified that appellant
had said that she would be in the bathroom prior to the incident. S.K.H. also stated
that she had heard the victim laughing and had seen her jumping on appellant's bed
before the incident; she testified that the victim "always jumps on my mom and dad's
bed." In addition, she stated that when she heard the victim crying, she went to the
bedroom and "saw her [the victim] with the curling irons wrapped around her leg." 
She then testified that appellant ran from the bathroom to the bedroom to see what
had happened.

 The oldest of appellant's other two children, S.H., testified that she had heard
the victim jumping on appellant's bed before she was injured; she stated that the
bedsprings were making noise as the victim jumped on the bed. She also testified that
the victim began to scream because she had fallen on the floor. In addition, she stated
that appellant came out of the bathroom when the victim began to scream. 

 Betsy Maldonado, appellant's sister, testified that when she asked the victim
what had happened, the victim responded by saying, "I was jumping on the bed, and
I got burned." Jennifer Hurley, appellant's neighbor, testified that when she asked the
victim what had happened, the victim stated that she "was jumping on Momma's bed
and she got a boo-boo." 

 Samuel Chapa, appellant's husband at the time of the incident, testified that the
evening of the incident in question, he had been at a laundromat. He also testified that
once he left the laundromat he went to his parents' house. Samuel stated that his
father informed him that appellant had called twice looking for him and that he
returned appellant's call from his parents' house. He further testified that when he
phoned appellant, she told him to return home because "something happened." He
stated that when he arrived at home, the victim was on the sofa whimpering and
appellant was crying. Samuel testified that he and appellant did not seek medical
attention for the victim the night of the incident because appellant was "afraid of
C.P.S., what they would tell us." On cross-examination, Samuel testified that the
victim is an active child and liked to jump on furniture, including beds and sofas. He
also testified that appellant would routinely do her hair sitting on the edge of the bed
with her curling irons and other hair instruments placed on the desk that was located
immediately next to the bed.

 Daniel Chapa, appellant's father-in-law, testified that appellant had called his
house two times the night of the accident looking for her husband. Daniel testified
that appellant sounded calm the first time she spoke with him that evening. He also
stated that when appellant called the second time looking for her husband, about
fifteen minutes after the first call, she sounded "a little different." Daniel further
testified that he heard the victim crying in the background during the second call but
that it was not unusual for the victim to be crying.

 Curiel testified that the victim's injuries were not consistent with the history
provided to her by appellant. Curiel also testified that based on the history of the
incident in question and the victim's previous similar injury, she was concerned that
child abuse might be involved and reported the incident to law enforcement and to
CPS. 

 Dr. Padmanabhan testified that his diagnosis of the victim was "second degree
burns to the left inner thigh, possibly non-accidental trauma." He stated that it was
"pretty unusual" to see accidental burns on the inner thigh. Dr. Padmanabhan also
testified that multiple accidental burns to the back of the thigh would be unusual
because "usually when there is a significant burn the child moves away from the spot,
and usually if the child - the hot surface . . . will leave no gaps." When asked, "If -
so, in other words, if there was one item that was causing all these injuries there
would be burn going from one spot to the other; is that right?," Dr. Padmanabhan
answered, "I think it would be continuous burn, it would be unusual for multiple spots
to happen."

 Kevin Hopkins, M.D., a plastic surgeon who treated the victim, testified that
when he first examined the victim he assessed that she had deep second degree or
third degree burns to her left thigh and calf. He also testified that the burns to the
victim's inner and outer thigh areas were consistent with the hair iron pinching the
thigh or touching it several times. 

 Finally, Investigator Martinez testified that he was unable to recreate an
accidental occurrence based on appellant's description of the incident. The officer
testified that based on the location where the hair iron would have been plugged in,
he could not make the hair iron fall in the direction where appellant said she had found
the victim with the hair iron stuck to the back of her leg. 

 Based on the cumulative force of the record evidence, as set out above, and
giving due deference to the jury's determination of the credibility of the witnesses and
the weight to give their testimony, as we must, we conclude that the jury could have
found that appellant, herself, committed the offense of injury to a child. See Guevara,
152 S.W.3d at 49 (citing Alexander, 740 S.W.2d at 758; Russell, 665 S.W.2d at
776); Wesbrook, 29 S.W.3d at 111 (citing Jones, 944 S.W.2d at 647). In addition,
we conclude that the jury could have inferred the requisite intent, be it intentionally or
knowingly, on the part of appellant in relation to the commission of the offense based
on her acts, words, and conduct, as well as on the occurrence of the victim's previous
similar injury. See Guevara, 152 S.W.3d at 50; see also Morgan, 692 S.W.2d at 881-82.

 Thus, viewing the evidence in the light most favorable to the verdict, as
measured against a hypothetically correct jury charge, we conclude that any rational
trier of fact could have found beyond a reasonable doubt that appellant, herself,
intentionally or knowingly caused serious bodily injury to the victim. See Jackson, 443
U.S. at 319; Malik, 953 S.W.2d at 240; see also Tex. Pen. Code Ann. § 22.04(a)(1)
(Vernon 2003 & Supp. 2006). Therefore, we conclude the evidence is legally
sufficient to support appellant's conviction. We overrule appellant's second issue.

 Furthermore, viewing the evidence in a neutral light, as measured against a
hypothetically correct jury charge, we conclude the evidence supporting the finding
that appellant, herself, committed the offense of injury to a child is not so weak as to
undermine confidence in the jury's determination or greatly outweighed by contrary
proof. See Johnson, 23 S.W.3d at 11; Adi, 94 S.W.3d at 131; see also Tex. Pen.
Code Ann. § 22.04(a)(1) (Vernon 2003 & Supp. 2006). Therefore, we conclude the
evidence is factually sufficient to support appellant's conviction. We overrule
appellant's first issue.

III. Conclusion

 Accordingly, we affirm the judgment of the trial court. 


 NELDA V. RODRIGUEZ

 Justice 



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion on Rehearing delivered

and filed this 30th day of November, 2006.
1. We note that appellant does not challenge that the victim suffered serious bodily injury.